IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 24, 2003

**STATE OF TENNESSEE v. JESSE TUGGLE**

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-1001-320     Timothy L. Easter, Judge**

---

**No. M2002-02426-CCA-R3-CD - Filed December 30, 2003**

---

The appellant, Jesse Tuggle, was convicted by a jury in the Williamson County Circuit Court of one count of forgery, one count of theft of property valued under $500, and one count of criminal impersonation. The trial court sentenced the appellant to one and one-half years of imprisonment in the Tennessee Department of Correction for the forgery conviction, eleven months and twenty-nine days imprisonment for the theft conviction, and six months imprisonment for the criminal impersonation conviction. The trial court further ordered the sentences to be served concurrently. On appeal, the appellant contests the sufficiency of the evidence supporting his forgery conviction and argues that the trial court erred in denying alternative sentencing. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Trudy L. Bloodworth (at trial) and Douglas P. Nanney (on appeal and at trial), Franklin, Tennessee, for the appellant, Jesse Tuggle.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Lee Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The appellant was indicted by the Williamson County Grand Jury on one count of forgery, one count of theft of property valued under $500, one count of criminal impersonation, and one count of possession of burglary tools. The trial on these charges began in the Williamson County Circuit Court on May 8, 2002.

Corporal Melissa Westbrook with the Brentwood Police Department testified that, due to numerous reports of burglary, she was patrolling Andrews Cadillac and Land Rover Nashville at 2:45 a.m. on May 17, 2001. She explained that the parking lot of the Andrews Cadillac dealership "flows into" the parking lot of the Land Rover Nashville dealership. Corporal Westbrook was driving in the parking lot of the Cadillac dealership with her patrol car "blacked out," i.e., the lights on the vehicle were turned off. From her vantage point, she observed the appellant crouched suspiciously between two vehicles in the Land Rover parking lot. Corporal Westbrook stated that part of the Land Rover dealership is located in Davidson County and part is located in Williamson County. Based upon her familiarity with the boundary of the two counties, Corporal Westbrook knew that the appellant was crouched in the Williamson County portion of the parking lot.

Corporal Westbrook turned on the lights of her patrol car and "sped towards" the appellant. The appellant raised from his crouched position, then crouched again, and finally stood and placed his hand in the right front pocket of his pants. Corporal Westbrook parked and exited her vehicle. She called for backup, approached the appellant, and asked for his name. The appellant replied that his name was "Jesse Ramsey," then he immediately stated that his name was "Ramsey Spencer."

Corporal Westbrook asked the appellant for identification. The appellant removed a bifold business card holder from his pocket. The appellant opened the makeshift wallet and handed the officer a check cashing card. While the appellant was removing the check cashing card, he attempted to shield from Corporal Westbrook's view an item in the wallet that appeared to be a driver's license. After the appellant presented the check cashing card, Corporal Westbrook advised the appellant that she needed to see the picture identification that she had seen in the wallet. The appellant replied, "What?" The appellant then maintained that his driver's license was in his vehicle and that his vehicle was located behind the Land Rover office building. At that point, Corporal Westbrook and the appellant were joined by Detective Adrian Breedlove of the Brentwood Police Department. At trial, Detective Breedlove testified that the events took place in Williamson County.

Corporal Westbrook asked the appellant why he was at the dealership and the appellant replied that he worked there. Corporal Westbrook noted that throughout the encounter the appellant "kept inching further away from the patrol vehicles." The officer opined that the appellant was attempting to separate the police from their vehicles. Accordingly, Corporal Westbrook believed that the appellant was trying to flee.

The appellant repeatedly maintained that his driver's license was in his vehicle. Accordingly, the officers decided to drive to the appellant's vehicle to obtain his driver's license. Because of safety concerns, the officers determined that Detective Breedlove would transport the appellant to his vehicle. Also for safety reasons, Detective Breedlove performed a pat-down of the appellant in conformance with police department policy. The appellant became beligerent with the officers and had to be "physically subdue[d]" by Detective Breedlove.

After conducting the search, Detective Breedlove discovered a Phillips head screwdriver with a red plastic handle in the right front pocket of the appellant's pants. Additionally, Detective

Breedlove discovered the bifold wallet the appellant had produced earlier. Inside the wallet was an identification card bearing the appellant's name and photograph. The card indicated that it was to be used for identification purposes only. However, the identification card had been altered to make it appear to be a valid Tennessee driver's license.

Detective Breedlove placed the appellant under arrest for resisting stop, frisk, or halt and possession of burglary tools.[1] The officers then proceeded to the appellant's vehicle, which was located behind the Land Rover office building, to conduct an inventory search. Both officers asserted that the appellant's vehicle was located in Williamson County. The vehicle, which was a dark green Infiniti Q-45, was running when the officers arrived. Additionally, the parking lights of the vehicle were on, the stereo was playing, and the doors of the vehicle were unlocked. Upon a search of the vehicle, Detective Breedlove discovered a Tennessee driver's license bearing the name "Ramsey Spencer." The appellant's photograph was on the license. The purported driver's license was discovered in the center console of the vehicle. Additionally, a dealer's license plate was loosely affixed to the rear of appellant's vehicle where a regular license plate would normally be placed. The license plate could only be affixed to the vehicle by use of Phillips head screws. Another license plate was discovered in the trunk.

Detective Breedlove asserted that the driver's license bearing the name "Ramsey Spencer" was "presented to me de facto. It was there." While the appellant did not hand the license to the officers, he stated prior to his arrest that he needed to obtain his driver's license from his vehicle.

During the booking process, the appellant was uncooperative, refusing to let police take his picture or obtain his fingerprints. The appellant also refused to answer questions regarding his name or social security number. Corporal Westbrook and Detective Breedlove stated that the appellant never told them that he was having trouble with his vehicle on the night of his arrest.

Ronnie Reed, the general manager for Land Rover Nashville, stated that the appellant did not work for Land Rover, nor had he ever worked for that business. Moreover, Reed confirmed that the license plate found on the appellant's car belonged to the Land Rover dealership and was used when the vehicles were being "demonstrated." Reed asserted that the license plates for the business were usually kept in the office building, but occasionally the plates were left on a vehicle that had just been driven. He opined that the dealer's license plates cost approximately $125 per tag.

Reed stated that he never gave the appellant permission to enter the dealership's parking lot or to take the dealer's license plate. Reed acknowledged that the parking lot of the dealership was not enclosed by fencing. Reed further conceded that customers occasionally shopped for vehicles when the business was closed. Finally, Reed confirmed that the portion of the parking lot where the appellant was discovered and where the appellant's car was located were both in Williamson County.

---

[1] See Tenn. Code Ann. §§ 39-14-701 and 39-16-602 (1997).

Kenneth Wade Birdwell, the manager of the Financial Responsibility section of the Tennessee Department of Safety testified that he was the custodian of driver's license records. He presented the photograph on record for Ramsey Spencer and compared the photograph to the picture that was on the driver's license found in the appellant's car. Birdwell determined that the photograph on the license in the appellant's car did not match the photograph on record for Ramsey Spencer.

The appellant's wife, Tina Tuggle, testified that she had been married to the appellant for four and one-half years, and the two had a four-year-old son. Tuggle worked as the Coodinator of Player Development and Player Personnel for the Tennessee Titans football team. She testified that the appellant worked as an independent contractor with several businesses and often kept odd hours to accommodate his clients.

Tuggle stated that she had been talking with Chuck Haynes, an employee of Andrews Cadillac, regarding her interest in purchasing a Land Rover vehicle. However, Tuggle ultimately purchased a different vehicle.

Tuggle explained that the appellant's Infiniti had been involved in a car accident prior to May 17, 2001. After the vehicle was repaired, she and the appellant discovered that the lug nuts of the automobile were damaged and had to be tightened periodically or the vehicle would begin to shake. The appellant routinely kept tools with him to tighten the lug nuts.

Tuggle admitted that she was the primary supporter of the family. The appellant had not made much money from his recent jobs. Additionally, she revealed that she and the appellant had been experiencing financial difficulties for approximately two years prior to trial, which difficulties resulted in bankruptcy proceedings after the offense occurred.

The trial court granted the appellant a judgment of acquittal on the charge of possession of burglary tools but submitted the remaining charges to the jury. After deliberation, the jury returned guilty verdicts on the charges of forgery, theft, and criminal impersonation.

At the sentencing hearing, Wanda Sullivan, a court clerk, testified that the appellant had paid only $600 toward payment of his court ordered fees. Sullivan noted that the first $100 payment was made shortly after the trial court threatened to revoke his bond, and the remaining $500 payment was made following the State's filing of a motion to revoke the appellant's bond. After reviewing the appellant's affidavit of indigency, Sullivan opined that the appellant appeared to be capable of paying his fees.

David Pratt, who prepared the appellant's presentence report, testified that he spoke with the appellant and Tuggle several times by telephone in order to prepare the report. Pratt stated that he had some difficulty contacting the appellant, but the appellant was cooperative once Pratt was able to speak with him. Pratt verified that the appellant was employed, but he was unable to verify the appellant's income.

Pratt revealed that according to "Metro records," the appellant had previously used the name "Ramsey Spencer" in connection with other arrests. Pratt stated that the appellant failed to mention some prior convictions during their conversations, but the appellant was for the most part forthcoming. Pratt discovered that the appellant had previously served two probationary sentences.

Pratt revealed that the appellant did not have a history of felony convictions. Pratt utilized the National Crime Information Center (NCIC) database as part of his investigation of the appellant's prior criminal history. Pratt explained that he discovered convictions for the appellant in Davidson County that were not listed on NCIC. Pratt noted that NCIC listed "Ramsey Spencer" as an alias for the appellant; however, the appellant had no convictions under the name "Ramsey Spencer." Pratt acknowledged that NCIC is sometimes incomplete and is not always 100% accurate.

Tina Tuggle testified that she filed individually for bankruptcy after the offense but prior to the appellant's trial. She maintained that their family was "definitely a two income family." However, in the foregoing two years, the appellant had mostly "sales and commission" jobs because his "area of expertise" was sales. The appellant did not earn much and the family had to function mainly from Tuggle's salary, leading to financial problems.

Tuggle explained that medical difficulties experienced by their son accounted for part of their financial difficulties. Tuggle asserted that she and the appellant were not being lax in paying his court fees, but they had to choose between court fees and their son's medical expenses. Tuggle explained that she had chosen to pay the costs associated with her son's health. Regardless, Tuggle testified that she would make a $200 payment towards the appellant's court fees immediately following the sentencing hearing.

Tuggle maintained that she and the appellant shared parenting responsibilities. She also maintained that the appellant cared for their son while she was on business related trips. As traveling was a large part of her job, the appellant's caretaking was necessary. Moreover, Tuggle noted that neither she nor the appellant were originally from the area and therefore had no nearby family or friends who could care for their son while she traveled.

Tuggle explained that Ramsey Spencer is the appellant's younger brother. However, she testified that she did not know that the appellant had ever identified himself by the name "Ramsey Spencer." She was also unaware of the appellant possessing any falsified identification.

At the conclusion of the sentencing hearing, the trial court sentenced the appellant as a standard Range I offender to one and one-half years of incarceration for the forgery conviction, eleven months and twenty-nine days for the theft conviction, and to six months for the criminal impersonation conviction. The court ordered that the sentences be served concurrently. Additionally, the trial court denied alternative sentencing. The appellant timely appealed.

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). We also note that a guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Knight, 969 S.W.2d 941, 959 (Tenn. Crim. App. 1997).

On appeal, the appellant contests only the sufficiency of the evidence supporting his forgery conviction. Therefore, we will not address any concerns with the sufficiency underlying his theft or criminal impersonation convictions. Tennessee Code Annotated section 39-14-114(a) (1997) provides that "[a] person commits an offense who forges a writing with intent to defraud or harm another." Tennessee Code Annotated section 39-14-114 further provides:

> (b)(1) "Forge" means to:
>
> (A) Alter, make, complete, execute or authenticate any writing so that it purports to:
>
> (i) Be the act of another who did not authorize that act;
>
> (ii) Have been executed at a time or place or in a numbered sequence other than was in fact the case; or
>
> (iii) Be a copy of an original when no such original existed;
>
> (B) Make false entries in books or records;
>
> (C) Issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of subdivision (1)(A); or
>
> (D) Possess a writing that is forged within the meaning of subdivision (1)(A) with intent to utter it in a manner specified in subdivision (1)(C); and

(2) "Writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and symbols of value, right, privilege or identification.

Possession of an object can be either actual or constructive. See State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996). To find constructive possession, the State must show that the person accused had the power and intention at a given time to exercise dominion and control over the object directly or through others. See State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). In other words, "'constructive possession is the ability to reduce an object to actual possession.'" Id. (quoting State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)).

In the instant case, the State elected to proceed based upon the appellant's possession of a driver's license bearing the name "Ramsey Spencer." The record reflects that the appellant, upon questioning by police, stated that his name was "Ramsey Spencer." He repeatedly maintained that his identification was in his vehicle. In fact, the appellant offered to obtain his driver's license from his vehicle for the officers' inspection. To ensure the safety of the officers, Detective Breedlove informed the appellant that he would drive the appellant to his vehicle, but he would need to pat-down the appellant prior to allowing him into the patrol car. Subsequent to the pat-down, Detective Breedlove arrested the appellant for resisting stop, frisk, or halt and possession of burglary tools. After the arrest, the officers performed an inventory search of the appellant's vehicle and discovered a driver's license bearing the appellant's photograph and the name "Ramsey Spencer."

Additionally, the Department of Safety driving records revealed that the photograph on record for Ramsey Spencer did not match the photograph on the driver's license found in the appellant vehicle. Instead, the photograph on the driver's license found in the appellant's vehicle was that of the appellant. The proof demonstrated that the appellant possessed the forged license with the intent to utter it to Detective Breedlove, as evidenced by the appellant's repeated offers to obtain his identification from his vehicle. See Tenn. Code Ann. § 39-14-114(b)(1)(D). The only license found in the vehicle was fraudulent. The evidence supports the jury's determination that appellant acted with the intent to defraud the police concerning his identity. Accordingly, we conclude that the evidence is sufficient to sustain the appellant's forgery conviction.

We note also that the appellant raised questions concerning the proof of venue. This court has explained:

> The state has the burden to prove that the offense was committed in the county of the indictment. Venue may be shown by a preponderance of the evidence, which may be either direct, circumstantial, or a combination of both. Venue is not an element of the offense. . . . Rule 18(b) of the Tennessee Rules of Criminal Procedure provides that "if one or more elements of an offense are

committed in one county and one or more elements in another, the offense may be prosecuted in either county."

State v. Smith, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995) (citations omitted). In the instant case, the State provided ample proof that the appellant possessed the forged driver's license in Williamson County. Thus, the State established venue by a preponderance of the evidence.

## B. Sentencing

The appellant does not contest the length of his sentences. His sole complaint regarding sentencing is that the trial court denied alternative sentencing. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (1997). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (1997 and 2003); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d); Ashby, 823 S.W.2d at 169. Regardless, the burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

We note that an appellant is eligible for alternative sentencing if the sentence actually imposed is eight years or less. See Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). The appellant was sentenced as a standard Range I offender for his Class E felony conviction for forgery and the sentence imposed was less than eight years; accordingly, he is presumed to be a favorable candidate for alternative sentencing.

The appellant was also convicted of theft of property valued under $500, a Class A misdemeanor, and criminal impersonation, a Class B misdemeanor. We note that the trial court has the authority to place a misdemeanant on probation either after service of a portion of the sentence in confinement or immediately after sentencing. See Tenn. Code Ann. § 40-35-302(e)(1)(2) (1997 and 2003). However, we note that, while certain Class C, D, or E offenders are entitled to a presumption in favor of probation, the appellant is entitled to no such presumption regarding his misdemeanor sentences. See State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Our supreme court has observed that "[i]n addition to the statutory considerations for issuing sentences of confinement, the misdemeanor sentencing statute merely requires a trial judge to consider

enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998).

The presumption in favor of alternative sentencing may be rebutted by "evidence to the contrary." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Zeolia, 928 S.W.2d at 461.

In the instant case, the trial court initially stated that it would consider the circumstances of the offense and the principles of sentencing. Next, the trial court observed that the appellant qualified for the presumption in favor of alternative sentencing. However, the trial court determined that alternative sentencing was not appropriate because of the appellant's long history of criminal conduct. The court acknowledged that the appellant had no felony convictions but nevertheless determined that the appellant's misdemeanor history was sufficient to deny alternative sentencing.

The appellant's presentence report reflects that the appellant has six prior misdemeanor convictions, including convictions for assault, driving while impaired, disorderly conduct, and resisting stop, frisk, or halt. When arrested for three of these offenses, the appellant represented himself to be "Ramsey Spencer." We conclude that this is sufficient criminal history to overcome the presumption in favor of alternative sentencing.

Additionally, the appellant has previously served probationary sentences and has failed to reform. Therefore, the record reveals that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the [appellant.]" Tenn. Code Ann. § 40-35-103(1)(C). Accordingly, we conclude that the trial court did not err in denying alternative sentencing.

### III.  Conclusion

We affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE