STATE of Tennessee, Appellee,

v.

Harold Dewayne SMITH, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Dec. 19, 1995.

William E. Zierer, Morristown, for Appellant.

Charles W. Burson, Attorney General and Reporter, Darian B. Taylor, Assistant Attorney General, Criminal Justice Division, Nashville, John F. Dugger, Jr., and Victor J. Vaughn, Asst. District Attorneys General, Morristown, for Appellee.

*OPINION*

WADE, Judge.

The defendant, Harold Dewayne Smith, was convicted of two counts of forgery in an amount under $1,000.00. The trial court imposed concurrent, Range II sentences of four years on each count. The defendant was fined $3,000.00 on each count.

In this appeal of right, the defendant challenges the sufficiency of the evidence and presents the following additional issues for our review:

(1) whether the proof established venue in Hamblen County;

(2) whether the trial court properly admitted the testimony of a handwriting expert;

(3) whether the trial court properly instructed the jury on the possible range of sentence; and

(4) whether the sentence was excessive.

We affirm the judgment of the trial court.

On January 15, 1994, a vehicle belonging to the victim, Donald E. Cogdill, was stolen by a person he identified as Mark Caudale. There were several checks on the victim's business account located within the vehicle. Two of the checks, totalling $626.99, were later cashed bearing the forged signature of the victim. A subsequent investigation by the Morristown Police Department established that Brian Joe Taylor, a Morristown resident, had passed the two forged checks which had been made out to "Kenny Carpenter." At trial, Taylor testified that the two checks at issue had been typed and signed by the defendant at the residence of Lisa Graves. Taylor cashed the checks at Food City and Sam's Market, kept $100.00 for himself, and gave the rest to the defendant and Michael Todd Drinnon. Taylor pled guilty to two counts of forgery. Ms. Graves pled guilty to seven counts of forging checks in Hawkins County.

When interviewed by the police, the defendant denied any knowledge of the checks. He voluntarily provided the police with a handwriting sample. Police acquired additional samples of the defendant's handwriting from other sources.

Arthur Bohanan, a police specialist with the Knoxville Police Department, qualified as an expert in handwriting analysis. Detective Bohanan was unable to reach any conclusions from the sample provided by the defendant as "not ... typical normal handwriting for anyone." From other samples, however, Detective Bohanan later determined that "it was highly probable that [the defendant] did write the name on both of those checks." About one week before the trial, police provided Detective Bohanan with even more samples of documents the defendant was known to have signed. On the day before the trial, Detective Bohanan formed the opinion that the defendant "definitely did sign" on both of the checks.

### I

 Article I, § 9 of the Tennessee Constitution provides in part that in all criminal prosecutions by indictment or presentment, the accused has the right to a speedy, public trial by an impartial jury of the county in which the crime shall have been committed. *See also* Tenn. R.Crim. P. 18. The state has the burden to prove that the offense was committed in the county of the indictment. *Harvey v. State*, 213 Tenn. 608, 376 S.W.2d 497 (1964). Venue may be shown by a preponderance of the evidence, which may be either direct, circumstantial, or a combination of both. *Hopper v. State*, 205 Tenn. 246, 326 S.W.2d 448 (1959). Venue is not an element of the offense. *State v. Baker*, 639 S.W.2d 670 (Tenn.Crim.App.1982). Slight evidence with respect to venue will be sufficient to carry the burden of proof if the evidence is uncontradicted. *State v. Bennett*, 549 S.W.2d 949 (Tenn.1977). Rule 18(b) of the Tennessee Rules of Criminal Procedure provides that "if one or more elements of an offense are committed in one county and one or more elements in another, the offense may be prosecuted in either county." *See State v. Knight*, 616 S.W.2d 593 (Tenn.1981).

 The statutory definition of "forge" is to "[a]lter, make, complete, execute or authenticate any writing so that it purports to ... [b]e the act of another who did not authorize that act[.]" Tenn.Code Ann. § 39–14–114(b)(1)(A)(i). Thus, the state was required to prove by a preponderance of the evidence that the defendant executed the checks in Hamblen County. Taylor testified that the forgery occurred at the Graves' residence. Hawkins County Clerk Holly Jaynes identified Hawkins County indictments listing Graves' address as 1150 Kennedy Circle, Morristown, Tennessee. Other proof in the trial established that Morristown is in Hamblen County.

While the evidence of venue was predominately circumstantial, the place of the forgery was not a seriously contested issue at trial. Because slight evidence is sufficient, the state met its burden here.

### II

The defendant next complains that the open file discovery policy of the state was inadequate in this case. While defense counsel had been advised that the handwriting expert had provided two preliminary written reports, the first of which was inconclusive, and the second of which suggested a high probability that the defendant forged the signature of the victim, the expert did not make a conclusive identification until he saw additional samples on the eve of the trial. Defense counsel was not apprised of this development until the next morning. The defendant claims that this qualified as an "unexcused prejudicial variance between discovery work product and proof at trial;" he argues that the "conclusive" opinion should have been excluded from the evidence.

 Rule 16(a)(1)(D) of the Tennessee Rules of Criminal Procedure provides that the defendant is entitled to discover and inspect "any results or reports ... of scientific tests or experiments ... which are within the possession, custody or control of the state." The rule goes on to provide that if "a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection," that party should "promptly notify the other party ... of the existence of the additional evidence or material." Tenn.R.Crim. P. 16(c). In the event there has been a failure to comply with this rule, the trial court may, among other things, grant a continuance or prohibit the introduction of the undisclosed

evidence. Tenn.R.Crim. P. 16(d)(2). When there has been a failure to produce discoverable material within the allotted time, the trial judge has the discretion to fashion an appropriate remedy; whether the defendant has been prejudiced by the failure to disclose is always a significant factor. *State v. Baker,* 751 S.W.2d 154, 160 (Tenn.Crim.App.1987). Generally speaking, the exclusion of the evidence is a drastic remedy and should not be implemented unless there is no other reasonable alternative. *See, e.g., State v. House,* 743 S.W.2d 141, 147 (Tenn.1987).

It is noteworthy here to point out that the defendant had been granted the funds to employ his own handwriting expert. Moreover, the defendant did not seek a continuance upon discovering that Detective Bohanan had made a conclusive identification; in our view, a continuance would have been the more appropriate remedy had it been sought. Finally, defense counsel candidly acknowledged that he suspected that the state expert might provide stronger testimony at trial than indicated by the two initial reports; there may have been a basis for that suspicion by the content of any findings made by the expert for the defense. Under all of these circumstances, we would hold that the trial court did not abuse its discretion by admitting the evidence.

The defendant's claim that the evidence is insufficient is based entirely upon the success of his assertion that the handwriting evidence should have been excluded. Because we have found that the testimony was properly admitted, the evidence is clearly sufficient.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters trusted exclusively to the jury as triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App. 1978). This court may not re-evaluate the evidence or substitute its inferences for those drawn by the trier of fact. *Farmer v. State,* 574 S.W.2d 49, 51 (Tenn.Crim.App.1978).

Convictions may only be set aside when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App. P. 13(e).

Here, an accomplice testified that the defendant had forged the two checks at issue. A fingerprint expert corroborated that testimony by concluding that the handwriting of the defendant matched the forged signatures of the victim. Thus, the record demonstrates that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

III

The defendant also complains that the trial court committed error by the following instructions to the jury:

If you find the defendant guilty of forgery, the punishment that the court can fix is a determinate sentence that can possibly range from a minimum of one year to a maximum of four years.

\* \* \* \* \* \*

Where the minimum sentence is one year, it can be reduced to any period of time in the county jail from one day or a fraction thereof up to but not exceeding eleven months, twenty-nine days.

The defendant argues that the instruction was misleading because he qualified as a Range II offender and was therefore subjected to a two- to four-year sentence.

The state first points out that the defendant failed to object to the instruction at trial. The failure to do so usually results in a waiver of the issue on appeal. More importantly, while the state had filed a notice to have the defendant sentenced as a Range II offender, that determination had not been made at the time the jury was charged. In consequence, the trial court correctly charged the jury of the law at the time the instructions were provided.

Tenn.Code Ann. § 40–35–201(b) provides, in part, that "upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all

lesser included offenses." In *State v. Cook,* 816 S.W.2d 322 (Tenn.1991), the trial court had instructed the jury on a Range I offense when the only possible sentence was actually within Range II. Our supreme court held that the legislation had provided the defendant with a statutory right:

> The Legislature, in its wisdom, certainly has the right and power to direct the judicial process. They have said that where a defendant wants his trial jury to know the range of possible punishments resulting from convictions that he is entitled to have that information conveyed to the jury. To deny this defendant that statutory right constitutes prejudice to the judicial process, rendering the error reversible under Rule 36(b) of the T.R.A.P.

*Id.* at 327.

Here, the trial court instructed the jury that forgery provided for a range of punishment of between one and four years. A Range I sentence must be between one and two years. A Range II sentence for forgery is between two and four years. Whether the defendant qualified as Range I or Range II depended upon the proof offered at any subsequent sentencing hearing. Thus, the jury was aware of the possible range of punishment that could have resulted from their verdict. *State v. DeWayne Foster,* No. 01C01–9501–CC–00008, 1995 WL 687700 (Tenn.Crim.App., at Nashville, November 21, 1995). In our view, the instructions were accurate. *See State v. Howard Martin Adams,* No. 03C01–9403–CR–00123, 1995 WL 10340 (Tenn.Crim.App., at Knoxville, January 11, 1995).

### IV

The defendant's final complaint is that the sentence of the trial court was excessive. He reasons that because the amounts of the two checks forged were small, one for $287.72 and the other for $339.27, the severity of the offenses was disproportionate in relationship to the sentence.

█ When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption

that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991); *see State v. Jones,* 883 S.W.2d 597 (Tenn.1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210; *State v. Smith,* 735 S.W.2d 859, 863 (Tenn.Crim.App.1987).

In calculating the sentence for Class B, C, D, or E felony convictions, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn.Code Ann. § 40–35–210(c). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn.Code Ann. § 40–35–210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn.Code Ann. § 40–35–210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. *Id.* The presumptive sentence for a Class A felony is now the midpoint of the range. Tenn.Code Ann. § 40–35–210.

█ Here, the trial court began with the minimum sentence. Several enhancement factors were applied, none of which have been challenged by the defendant. The defendant had a previous history of criminal convictions in addition to those necessary to establish the range. Tenn.Code Ann. § 40–35–114(1). The defendant was found to be a

leader in the commission of the offense. Tenn.Code Ann. § 40–35–114(2). He has a previous history of unwillingness to comply with conditions of a sentence involving release in the community. Tenn.Code Ann. § 40–35–114(8).

Finally, the defendant was on parole when he committed these offenses. Tenn.Code Ann. § 40–35–114(13)(B). While the trial court conceded that one mitigating factor was applicable, little weight was given to that factor and the maximum sentence was imposed. Under these circumstances, the defendant has failed to overcome the presumption of correctness.

Accordingly, the judgment is affirmed.

TIPTON, J., and JOE D. DUNCAN, Special Judge, concur.