IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 22, 2002 Session

## STATE OF TENNESSEE v. ISRAEL MICHUA CAMACHO

**Appeal from the Criminal Court for Greene County**
**No. 00CR072A     James E. Beckner, Judge**

<hr>

**No. E2001-00554-CCA-R3-CD**
**August 2, 2002**

<hr>

The defendant, Israel Michua Camacho, appeals his convictions in the Greene County Criminal Court for facilitation of possession of one-half gram or more of cocaine with intent to deliver, a Class C felony, and facilitation of possession of not less than ten pounds nor more than seventy pounds of marijuana with intent to deliver, a Class E felony. The trial court sentenced him as a Range I, standard offender to concurrent sentences of four years in the Tennessee Department of Correction for the facilitation of possession of cocaine conviction and two years for the facilitation of possession of marijuana conviction. The defendant claims that the evidence is insufficient to support his convictions and that he deserves a new trial because the state failed to provide the defense with a discoverable videotape in a timely manner. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Edward L. Kershaw, Greeneville, Tennessee, for the appellant, Israel Michua Camacho.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Eric D. Christiansen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to an undercover drug operation conducted by the Third Judicial Drug Task Force in June 2000. Officer Tim Ward of the Greeneville Police Department testified that he was assigned to the drug task force and that on June 13, 2000, he helped execute a search warrant on a mobile home at 42 Swift Park Lane. He said he went to the door of the home, knocked, and announced that the police had a search warrant. He said the drug task force's entry team entered the

mobile home and found two males in the living room and the defendant and a female in the back bedroom.

On cross-examination, Officer Ward testified that he patted down the defendant and that he did not find any drugs on the defendant's person. He said he did not otherwise search the defendant. He acknowledged that the drug task force had been investigating two men named Adrian Espanoza and Mario Cedillo and that several drug transactions had taken place between the two men and the drug task force's confidential informant, Mike Fillers. He acknowledged that he thought Mr. Espanoza and Mr. Cedillo were living in the mobile home at 42 Swift Park Lane. He said that the police did not find Mr. Espanoza in the mobile home but that Mr. Cedillo was one of the two men that the police found in the living room. He acknowledged that earlier in the day, he conducted surveillance on a drug transaction that took place between Mr. Fillers and Mr. Espanoza.

Special Agent Mike Hannon of the Third Judicial Drug Task Force testified that he smelled marijuana in the living room and that the smell got stronger as he walked to the front bedroom. He said that in a closet in the front bedroom, he found a plastic box that contained several marijuana bricks, a set of digital scales, a set of hanging hand scales, and a plastic bag with marijuana residue in it. He said that he also found a green duffle bag in the closet and that the bag contained a handgun and boxes of ammunition. He said that a pair of black jeans was in a laundry basket in the front bedroom and that he found bags of cocaine in the jeans. He said he found the defendant's social security card, North Carolina learner's permit, and resident alien card on the front bedroom floor. On cross-examination, he testified that he did not test the handgun for fingerprints and did not find any identification in the jeans.

Special Agent Jim Williams of the Tennessee Bureau of Investigation (TBI) testified that he helped execute the search warrant at 42 Swift Park Lane. He said that inside the mobile home, he saw two Hispanic men sitting in the living room. He said that the police also found a Hispanic male and a Hispanic female in the back bedroom and that the female was very upset. He said he searched the back bedroom and found cocaine in a box that was on a shelf in the bedroom closet. He said that at the other end of the mobile home, he smelled marijuana.

Steve Spano, an officer with the Greeneville Police Department, testified that he helped execute the search warrant on the mobile home. He said he entered the mobile home after it had been secured and that the smell of raw marijuana was overwhelming. He said the home was so saturated with the smell that he was afraid his drug dog would not be able to pinpoint the source of the marijuana. He said he opened a window in the front bedroom to let some of the odor out of the home and that when he let the drug dog out of his patrol car, the dog went immediately to the open window.

Carl Smith, a forensic chemist with the TBI, testified that the police found six bricks of marijuana in the mobile home and that the bricks weighed a total of 21.9 pounds. He said the cocaine found in the mobile home weighed 130.3 grams.

Doug Johnson of the Greene County Sheriff's Department testified that he executed the search warrant on the mobile home. He acknowledged that the drug task force's confidential informant, Mike Fillers, never purchased drugs from the defendant. However, he said that about one month before the date of the offenses in question, he went with Mr. Fillers to buy cocaine from Mario Cedillo and that the defendant was present during the drug deal. He said the drug deal took place at a location different from the mobile home. He said that when he and Mr. Fillers arrived at the location, the defendant and Mr. Cedillo were sitting on the front porch of a house. He said that Mr. Fillers talked to Mr. Cedillo and that Mr. Cedillo or the defendant unlocked the home's front door, which was padlocked. He said that Mr. Fillers and Mr. Cedillo went into the home and that while Mr. Fillers was buying the cocaine from Mr. Cedillo, the defendant walked off the front porch and stood beside Officer Johnson.

Officer Johnson testified that on June 13, 2000, Mike Fillers met with Adrian Espanoza to buy cocaine. He said that Mr. Espanoza left Mr. Fillers and went to get the drugs. He said that officers followed Mr. Espanoza to the mobile home at 42 Swift Park Lane. He said that Mr. Espanoza went into the mobile home for a few minutes and that officers followed him back to Mr. Fillers. He said that Mr. Fillers paid Mr. Espanoza six hundred fifty dollars for the cocaine and that the police had recorded the serial numbers from the drug money. He said that when the police searched the mobile home later that day, they did not find the drug money or any other large amounts of money. The jury convicted the defendant of facilitation of possession of one-half gram or more of cocaine with intent to deliver and facilitation of possession of not less than ten pounds nor more than seventy pounds of marijuana with intent to deliver.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his convictions because the evidence shows that he was merely present in the mobile home and that he did not sell or handle any drugs. In addition, he contends that the evidence is insufficient because it did not establish how his identification got into the front bedroom, where most of the drugs were found. The state claims that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Under Tenn. Code Ann. § 39-17-417(a)(4) prohibits a defendant from knowingly possessing a controlled substance with the intent to manufacture, deliver, or sell the controlled substance. If the

possession involves cocaine in an amount greater than one-half gram, the offense is a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1). If the possession involves marijuana in an amount not less than ten pounds nor more than seventy pounds, the offense is a Class D felony. Tenn. Code Ann. § 39-17-417(g)(2). Under Tenn. Code Ann § 39-11-403(a), facilitation of a felony occurs if a person, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), . . . knowingly furnishes substantial assistance in the commission of the felony." Facilitation of a felony is "an offense of the class next below the felony facilitated by the person so charged." Tenn. Code Ann. § 39-11-403(b).

This court has held that the "mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, we note that in this case, the defendant was found guilty of facilitation of possession, not possession, of a controlled substance. Viewed in the light most favorable to the state, the evidence supports the defendant's convictions. About one month before the offenses in question, Officer Doug Johnson went with an undercover informant to buy drugs from Mario Cedillo. The defendant was present during the transaction, and as the informant bought cocaine from Mr. Cedillo, the defendant walked over to Officer Johnson and stood beside him. When the drug task force executed the search warrant on the mobile home at 42 Swift Park Lane, it found the defendant and Mario Cedillo inside. Although most of the drugs were not found in the same room as the defendant, Officer Steve Spano testified that the smell of raw marijuana in the mobile home was overwhelming. Thus, from these facts, we believe the jury could infer that the defendant knew about the large amount of drugs in the mobile home and could rationally find beyond a reasonable doubt that the defendant was acting in a supportive capacity to Mr. Cedillo's ongoing sale and delivery of cocaine and marijuana. The evidence is sufficient to support the convictions.

## II. FAILURE TO TURN OVER VIDEOTAPE

The defendant contends that he deserves a new trial because the state failed to turn over a discoverable videotape in a timely manner, which prevented him from locating and questioning an important witness before trial. The state claims that the defendant has waived the issue because he has failed to support it with argument, citation to authorities, or appropriate references to the record as required by Rule 10, T.R.A.P. In addition, the state claims that the videotape was not discoverable because "it pertained to a separate investigation" and the state did not intend to use it at trial. We believe that the defendant is not entitled to a new trial.

About three months before trial, the defense filed a broad motion for discovery. On the Thursday before trial, the defense asked the state if any kind of tape recording had been made of the June 13 drug transaction that took place between the drug task force's confidential informant and Adrian Espanoza. The next day, the state turned over to the defense a videotape showing the June 13 transaction. From the videotape, the defense learned for the first time that the drug task force's confidential informant was Mike Fillers. During the weekend before the defendant's trial, defense counsel attempted to contact Mr. Fillers in order to ask him whether he had been involved in any

drug transactions with the defendant. However, the defense was unable to find Mr. Fillers before trial.

In a pretrial hearing the day before trial, the defense moved the trial court to dismiss the charges against the defendant on the grounds that the state's late disclosure of the videotape had prevented him from locating and questioning Mr. Fillers before trial. The defendant stated that he did not want the trial to be continued. The state claimed it had not disclosed the videotape because it had not thought the tape to be relevant to the defendant's case. The state asserted that once the defendant asked for the tape, the state gave it to him immediately. The trial court ruled that the videotape was discoverable under the defendant's broad motion for discovery. However, in denying the defendant's motion to dismiss, the trial court held that the defense's late access to the tape did not prevent the defendant from being able to defend himself properly.

If a party fails to comply with a discovery request, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Tenn. R. Crim. P. 16(d)(2). Whether a defendant has been prejudiced by the state's failure to disclose information is a significant factor in determining an appropriate remedy. State v. Smith, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995). Exclusion of evidence is a "drastic remedy and should not be implemented unless there is no other reasonable alternative." Id.

Obviously, dismissal of a case is a drastic remedy for a discovery violation. Furthermore, the defendant in this case has failed to demonstrate that he was prejudiced by the state's late disclosure of the videotape. We note that the defendant chose not to seek a continuance, which could have remedied his problem of not being able to locate and question the confidential informant before trial. We conclude that the trial court did not err in refusing to dismiss the defendant's case.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-5-