IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 18, 2019 Session

## STATE OF TENNESSEE v. MATT D. POLK

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2016-CR-53     David D. Wolfe, Judge**

_____

**No. M2018-01251-CCA-R3-CD**

_____

The Defendant, Matt D. Polk, was convicted of one count of the sale of 0.5 grams or more of cocaine and one count of the sale less of than 0.5 grams of cocaine. The Defendant received an effective sentence of twenty-five years. On appeal, the Defendant argues that a video recording was not properly authenticated and that the trial court erred in allowing an expert who had not been disclosed to the defense prior to the day of trial to testify. We conclude that the recording was properly authenticated and that the trial court did not abuse its discretion in permitting the testimony, and we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Leonard G. Belmares, II, Dickson, Tennessee, for the appellant, Matt D. Polk.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; W. Ray Crouch, District Attorney General; and Joseph C. Hall, Sr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

The Drug Task Force for the Dickson County Sheriff's Department conducted two separate controlled buys from the Defendant using a confidential informant. Count one

of the indictment alleged that on July 17, 2015, the Defendant sold less than 0.5 grams of cocaine, a Schedule II controlled substance. Count two of the indictment alleged that on August 26, 2015, the Defendant sold 0.5 grams or more of cocaine. At trial, the Defendant argued that a casual exchange between two friends, rather than a sale, occurred.

Agent Chris Freeze with the Drug Task Force testified that on July 17, 2015, the confidential informant met with the Defendant at a residence for the purpose of purchasing crack cocaine. Agent Freeze and Agent Ronnie Moran recorded the confidential informant's transaction with the Defendant using a video recording device, through which they were able to monitor the audio portion of the transaction as it took place. During the direct examination of Agent Freeze, the State played the video recording of the July 17, 2015 transaction. After playing a portion of the video recording, the prosecutor asked Agent Freeze if he recognized the video, and he responded, "Like I said, it's been a while since I have watched it, but yes, I do recognize that as being one of the tapes that we would have had."

The video showed the confidential informant in her vehicle driving to a residence. When the confidential informant parked her vehicle at the residence, a male voice asked why she was there. The confidential informant told the man that she was "looking" and that she was "needing something bad." At that point, the confidential informant exited the vehicle and stood in the yard with an African-American man, who was later identified by the confidential informant as the Defendant. The confidential informant told the man to "hook [her] up with something real good." The Defendant asked her if she knew anyone who took morphine. The Defendant told her it would take fifteen to twenty minutes for someone to bring the drugs. Throughout the encounter, the confidential informant repeatedly asked how long it would be until the drugs arrived. The Defendant then asked the confidential informant to follow him. She followed him into the tree line to a red and white tent, and both the confidential informant and the Defendant entered the tent.

After leaving the tent, the confidential informant spoke to another African-American man who was sitting under a carport. The Defendant said "fifteen minutes." The confidential informant asked, "Is it going to take him the whole fifteen minutes to get here." The Defendant walked into the house, and the confidential informant walked back to her vehicle and said, "[H]e has someone bringing it. It's going to take a minute." The video ended abruptly while the confidential informant was talking to the Defendant about an upcoming court date.

After the recording was played to the jury, defense counsel objected on the basis that Agent Freeze did not testify that "he participated in the recording, that he assisted in

the recording, he was present at the recording or anything of that nature." The trial court overruled the objection, finding that Agent Freeze "identified it as one of the tapes that he had reviewed." Agent Freeze testified that he could not see the confidential informant after her car pulled into the driveway but that he and Agent Moran listened to her interaction with the Defendant as it was occurring in real time. Agent Freeze agreed that the video was a "true and accurate representation of what [he] saw that day."

Agent Moran testified that prior to sending a confidential informant to do a controlled buy, he always searches the informant and the vehicle. The confidential informant is also searched after returning from a controlled buy. When the confidential informant met with Agent Moran and Agent Freeze after her July transaction with the Defendant, she gave Agent Moran a brown bag that contained a rock-like substance. Agent Moran was the lead investigator in both of the controlled buys targeting the Defendant. He recalled paying the confidential informant fifty dollars for the July buy and one hundred dollars for the August buy. He also recalled searching the confidential informant's person and vehicle before and after each controlled buy.

During the State's direct examination of Agent Moran, portions of the video recording of the controlled buy that occurred on August 26, 2015, were played for the jury. The second video began with Agent Moran stating the date and that he and Agent Turner were present with a confidential informant. Agent Moran stated that the confidential informant had contacted "[The Defendant] to purchase one gram of crack cocaine at $100." The video then showed the confidential informant enter her vehicle and drive for approximately six minutes. The Defendant entered the confidential informant's vehicle and sat in the passenger seat. The Defendant told the confidential informant to drive to a nearby gas station so he could get the drugs. The Defendant asked her for the money before they left to go "to the man's house." The confidential informant asked the Defendant if she could drive him to pick up the drugs. The Defendant exited the confidential informant's vehicle after she told him she did not want to give him the money before she had the drugs in her possession.

The Defendant returned to the confidential informant's car moments later, and the confidential informant began driving. At some point while the confidential informant was driving, the camera was moved so that the Defendant was no longer visible, but the conversation between the confidential informant and the Defendant could be heard. The Defendant exited the vehicle, and the confidential informant waited for him to return and communicated with the agents. When the Defendant returned, the confidential informant followed him in her vehicle. When she stopped driving, the Defendant opened the passenger side door and handed her something.

On cross-examination, Agent Moran acknowledged that he did not have a specific recollection of the search of the confidential informant's person or vehicle. He testified that during both controlled buys, the Defendant did not have drugs readily available, and the confidential informant had to wait until another person delivered the drugs to the Defendant. Agent Moran provided the confidential informant with recorded money, meaning that the serial numbers on the money were written down. The money that the confidential informant used to pay the Defendant for the drugs was never recovered. Agent Moran did not interview the Defendant.

The confidential informant testified that she purchased drugs from the Defendant for the Drug Task Force. She said that she was paid to purchase drugs from the Defendant and that these purchases occurred in Dickson County.

On cross-examination, the confidential informant acknowledged that at the time of the two controlled buys, she was on probation in both Hickman and Williamson counties. She testified that she was not promised leniency in exchange for her testimony. She did not recall where she met with the officers before the controlled buys. She stated that she had made approximately twenty purchases as a confidential informant on behalf of the Drug Task Force. The confidential informant had known the Defendant since 2003, and they once lived in the same trailer park and often used drugs together. The confidential informant identified the Defendant to the officers as someone who they should investigate. The confidential informant stated that on July 15th she "went to his house and bought drugs from him." She stated that when she went into the tent, the Defendant offered her crack cocaine from a pipe. She denied smoking from the pipe but admitted she put the pipe in her mouth. The confidential informant did not tell Agents Moran and Freeze about the pipe.

The State called Agent Glen J. Glenn, a TBI forensic scientist, as a witness. Defense counsel objected, claiming that he was not provided notice that Agent Glenn would be testifying as an expert. The trial court held a hearing on the matter outside of the presence of the jury. Defense counsel stated that he filed a request for discovery on July 27, 2016, requesting the "names[,] qualifications, address[,] and phone numbers of any and all expert witnesses that you intend to call." Defense counsel claimed that the State never furnished a list of experts and that he did not receive Agent Glenn's report. He did receive a Ms. Patterson's report. The Defendant argued that because he was not provided notice that Agent Glenn would be testifying and that he did not receive a copy of Agent Glenn's report prior to trial, Agent Glenn should not be permitted to testify. The trial court allowed the State and the Defendant to question Agent Glenn outside of the jury's presence. Agent Glenn testified that he had been a special agent with the TBI for twenty-three years and that he was a forensic chemist. Agent Glenn explained that he became involved in this case after Ms. Victoria Patterson, the agent who prepared the

initial report, left the TBI. Agent Glenn retested the evidence at the request of the State and wrote a separate report based on his analysis. The quantities in Agent Glenn's report were slightly lower because some of the sample was consumed by the testing.

The trial court overruled the Defendant's objection finding that the information in the report was based on Agent Glenn's independent analysis and that the Defendant would not be prejudiced by Agent Glenn's testimony. The trial court noted that the State provided the Defendant with a copy of Ms. Patterson's report and that he was on notice that an expert would testify regarding the substance and its quantity. The trial court found that the results of the two reports were "identical, with the exception of a smaller amount which this witness attributes to the fact that a portion of the drugs in question had to be used for the testing process which would account for the smaller amount involved." The Defendant did not request a continuance.

Agent Glenn was accepted by the trial court as an expert in the field of drug identification. He testified that he analyzed two different samples of crack cocaine from the July controlled buy. One sample weighed 0.14 grams, and the other sample weighed 0.17 grams. The State admitted Agent Glenn's report into evidence. On cross-examination, Agent Glenn discussed the discrepancies in his report and the report that was prepared by Ms. Patterson. He explained that Ms. Patterson's report showed that the first sample weighed 0.16 grams and that the second sample weighed 0.23 grams. On re-direct examination, Agent Glenn opined that the differences in the weight of the samples were likely caused by a portion of the sample being destroyed during Ms. Patterson's analysis.

Mr. William H. Stanton, a retired forensic scientist with the TBI, was accepted by the trial court as an expert in the field of drug identification. Mr. Stanton tested the substance that the confidential informant purchased from the Defendant during the August controlled buy. Mr. Stanton testified that he received a rock-like substance that weighed 0.58 grams and tested positive for cocaine.

The jury convicted the Defendant of one count of the sale of 0.5 grams or more of cocaine and one count of the sale of less than 0.5 grams of cocaine. The Defendant received an effective sentence of twenty-five years. The Defendant filed a motion for new trial, which the trial court denied. He now appeals.

**ANALYSIS**

The Defendant argues that the trial court erred in allowing the State to admit the video recording of the July 17, 2015, controlled buy and that the trial court erred in allowing Special Agent Glenn to testify. The Defendant also challenges the sufficiency

of the evidence in his brief. During oral argument before this court, appellate counsel conceded that the evidence was sufficient to support the convictions and that his argument addressed evidentiary issues rather than sufficiency. In light of this concession, this court will not address the sufficiency argument.[1]

## I.      Admissibility of the Video Recording

The Defendant challenges the admissibility of the video recording of the July 17th controlled buy. Specifically, he argues that the trial court erred in admitting the recording because it was not properly authenticated. The State responds that the trial court did not err in admitting the recording and that any error in the admission of the video recording was harmless. We agree with the State.

"[I]t is well-established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of discretion." State v. Stinnett, 958 S.W.2d 329, 331 (Tenn.1997). Tennessee Rule of Evidence 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." This rule is designed to ensure that "'there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1998)).

The trial court did not err in admitting the video recording because the testimony of Agent Freeze established that it "is what it is claimed to be." Tenn. R. Evid. 901(b)(1). Agent Freeze testified that he and Agent Moran set up a recording device and listened to the confidential informant's interactions with the Defendant in real time. They subsequently retrieved the recording from the confidential informant and reviewed it. He was able to identify the video recording as a true and accurate representation of the transaction that he witnessed live that day. Agent Freeze's testimony established that the recording was what it purported to be: a recording of the interactions the confidential informant had on July 17th. He did not have to identify the Defendant's voice to authenticate the recording as the one he contemporaneously monitored. The confidential

---

[1]  The Defendant challenges the jury instructions regarding his conviction for the sale of 0.5 grams or more of cocaine for failing to instruct the jury to determine the amount of cocaine sold to the confidential informant. This argument was included within the sufficiency portion of his brief. Because he failed to object at trial to the jury instructions and failed to include any issue regarding jury instructions within his motion for new trial, this issue has been waived. See Tenn. R. App. P. 3(e); see also State v. Prater, 137 S.W.3d 25, 33 n.2 (Tenn. Crim. App. 2003) (concluding that "[b]ecause the appellant did not challenge the jury instructions in motion for new trial, any issue regarding jury instructions has been waived."

informant's testimony subsequently identified the Defendant as the man who appeared on the recording. The Defendant objected on the basis that the State had not laid a proper foundation, because Agent Freeze did not observe the Defendant interact with the confidential informant. The Defendant did not object on the basis that the Defendant's voice was not authenticated within the video. The trial court overruled the Defendant's objection finding that Agent Freeze "identified it as one of the tapes he had reviewed." In light of Agent Freeze's testimony that he had the ability to listen to the confidential informant's interactions with the Defendant in real time, we conclude that the trial court did not abuse its discretion in admitting the video recording. *See id.*

The Defendant maintains that the video was not properly authenticated because Agent Freeze did not testify that he was familiar with the Defendant's voice. Further, the Defendant notes that the confidential informant was not asked if the video accurately depicted her interactions with the Defendant on July 17th. Recently, this court decided that a video recording was properly authenticated when the officer was familiar with the equipment, the confidential informant and his vehicle were searched before the transaction, and the officer had the capability to listen in real time to the interaction of the confidential informant and the defendant. *See State v. Bobby Lewis Smith*, No. M2010-02077-CCA-R3-CD, 2012 WL 3776679, at *4-5 (Tenn. Crim. App. Aug. 31, 2012).

## II. Agent Glenn's Testimony

The Defendant maintains that the trial court abused its discretion by allowing Agent Glenn to testify as an expert because the State failed to provide adequate notice to the defense that Agent Glenn would testify and failed to provide Agent Glenn's report in a timely manner, in violation of Tennessee Rule of Criminal Procedure 16(a)(1)(G). The State responds that the trial court did not abuse its discretion in allowing Agent Glenn to testify and that any error did not result in prejudice.

Tennessee Rule of Criminal Procedure 16(a)(1)(G) states:

Reports of Examinations and Tests. Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph the results or reports of physical or mental examinations, and of scientific tests or experiments if:

(i) the item is within the state's possession, custody, or control;

(ii) the district attorney general knows — or through due diligence could know — that the item exists; and

(iii) the item is material to preparing the defense or the state intends to use the item in its case-in-chief at trial.

Rule 16 also states that in the event that a party fails to comply with a discovery request, the trial court may "order the party to permit the discovery or inspection," "grant a continuance," "prohibit the party from introducing the undisclosed evidence," or "enter such other order as it deems just under the circumstances." Tenn. R. Crim. P. 16(d)(2)(A)-(D). A trial court "has wide discretion in fashioning a remedy for non-compliance with a discovery order, and the sanction should fit the circumstances of the case." *State v. Downey*, 259 S.W.3d 723, 737 (Tenn. 2008) (citing *State v. Collins*, 35 S.W.3d 582, 585 (Tenn. Crim. App. 2000)). A trial court abuses its discretion when it: "(1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous assessment of the evidence." *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013). This court has determined that exclusion of the evidence is a "drastic remedy and should not be implemented unless there is no reasonable alternative." *State v. Smith*, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

Recently, the Tennessee Supreme Court emphasized that "the abuse of discretion standard of review does not permit an appellate court to substitute its judgment for that of the trial court." *State v. Quintis McCaleb*, No. E2017-01381-SC-R11-CD, 2019 WL 3940922, *5 (Tenn. Aug. 21, 2019). A trial court abuses its discretion "'when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). We review a trial court's discretionary decision to determine "'(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.'" *Id.* (quoting *Lee Med., Inc.*, 312 S.W.3d at 524).

The Defendant argues that the trial court erred in allowing Agent Glenn to testify because he "was not provided the information regarding the new witness until the trial, [and] there was no other remedy but to prohibit the witness from testifying and the exhibits from being entered." The trial court considered the circumstances surrounding allowing Agent Glenn to testify and noted that the only difference in the two reports was that Agent Glenn's report showed a lesser amount of the cocaine than the original report. The trial court found that delayed disclosure had not prejudiced the Defendant because he was on notice regarding the substance of the expert testimony the State would offer at trial. As noted above, the trial court "has wide discretion" in creating a remedy for a failure to comply with Rule 16. *Downey*, 259 S.W.3d at 737. Here, the trial court gave

- 8 -

the Defendant leeway in questioning Agent Glenn regarding his credentials and his report.  Further, the Defendant did not request a continuance that would have allowed him time to review Agent Glenn's credentials and his report.  We conclude that the trial court did not abuse its discretion in allowing Agent Glenn to testify.

## CONCLUSION

Based on the foregoing analysis, the judgments of the trial court are affirmed.


_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE