IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 5, 2019

**STATE OF TENNESSEE v. MORRIEO ALLEN**

**Appeal from the Criminal Court for Shelby County**
**No. 15-04011          Chris Craft, Judge**

_____

**No. W2018-01339-CCA-R3-CD**

_____

Defendant, Morrieo Allen, was indicted for the offense of first degree felony murder in the perpetration of robbery. At the conclusion of the State's case-in-chief, Defendant moved for a judgment of acquittal, asserting that the State failed to prove venue in Shelby County and that the evidence was insufficient to support a conviction. The trial court denied Defendant's motion. A jury found Defendant guilty as charged, and the trial court sentenced Defendant to life in prison. On appeal, Defendant argues that (1) the trial court erred by denying his motion for judgment of acquittal when the proof at trial was insufficient to prove venue in Shelby County; and (2) that there was insufficient evidence to support his conviction. Having reviewed the record on appeal and applicable law, we find no error. The judgment of the trial court is therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Sherrye Brown, Acting District Public Defender; Phyllis Aluko, Assistant Public Defender, Memphis, Tennessee (on appeal) and Amy Mayne and Neil Umsted, Assistant Public Defenders, Memphis, Tennessee (at trial) for the appellant, Morrieo Allen.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau and Sarah Poe, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

*Evidence at trial*

Alesha Cox, Defendant's girlfriend, testified that on December 17, 2014, she had been texting the victim, Cleate Davis, to arrange a meeting to have sex in exchange for money. Defendant saw the texts between Ms. Cox and the victim. He became upset and confronted Ms. Cox. Ms. Cox explained to Defendant that she just needed help "getting the kids Christmas." Defendant told Ms. Cox that he would go with her to meet the victim and that he was "going to scare [the victim] and make him give the money so [she] didn't have to do anything."

The following morning, Defendant drove Ms. Cox in her vehicle to meet the victim at a church on Kerr Rosemark Road. An aerial photograph of the church located near the intersection of Center College Road and Kerr Rosemark Road was admitted as an exhibit at trial. Before the victim arrived, Ms. Cox moved to the driver's seat, and Defendant exited the vehicle and went behind the church. When the victim arrived, he parked beside Ms. Cox's vehicle facing the opposite direction. Ms. Cox testified that she was looking down at her cell phone when she heard gunshots. She testified that she looked over at the victim and saw "blood coming from his mouth." She then looked over her shoulder toward the back of her vehicle and saw Defendant "standing there with [a] gun in his hand," with the gun pointed toward the victim's truck. Ms. Cox testified that she asked Defendant why he shot the victim and that Defendant responded "because."

Following the shooting, Ms. Cox told Defendant that they could not leave the victim there, and Defendant told her to follow him while Defendant drove the victim's truck. Ms. Cox testified that Defendant went through the victim's pockets before moving the vehicles. Defendant took the victim's cell phone, wallet, and cash before "he pushed [the victim] over in the seat and told [Ms. Cox] to follow him[.]" Ms. Cox testified that she followed Defendant to a location she believed to be off of Mudville Road. She testified that Defendant drove the victim's truck down beside a bridge in tall grass and left it there. Defendant then came back to Ms. Cox's vehicle and got into the driver's seat. Defendant and Ms. Cox drove to a house in Millington where Defendant's cousin Michelle and her son Louis Taper lived. Ms. Cox and Defendant went inside the house, and Defendant and Louis Taper went into the back bedroom to talk.

Ms. Cox testified that when she and Defendant were leaving the house in Millington, she saw Defendant take the victim's cell phone and hide it in his cousin's garage or shed. Later that day, Ms. Cox and Defendant bought a football for her son. Ms. Cox believed that Defendant used the money he stole from the victim to buy the football. She testified that they then returned to Ms. Cox's mother's house, and

Defendant left in Ms. Cox's car to get his hair cut by Mr. Taper. Before he left, Defendant told Ms. Cox that "[t]his is not something to get lost in your mom's room about[,]" and she understood that to mean that she better "not say anything."

Ms. Cox testified that when Defendant returned home, he smelled "really bad of something that had been burning like rubber or something." She testified that she and Defendant saw a story on the news that night about a burning truck found in Millington, and she realized it was in the same area that she and Defendant had left the victim's truck. She asked Defendant what he did, and Defendant responded that he "did what he had to do" so that Defendant would not be implicated in the homicide.

Ms. Cox testified that she was indicted with Defendant for first degree murder in the perpetration of a robbery, but that she had not made any deals in exchange for her testimony. Following Defendant's arrest, she gave a statement to police that was consistent with her trial testimony. She testified that she was "scared" of what Defendant would do to her or her family.

On cross-examination, Ms. Cox denied ever planning to rob the victim and denied that she discussed with Defendant how they "might get away with this." She testified that she did not see Defendant with a gun until Defendant was pointing it at the victim. Ms. Cox further testified that she did not know where Defendant put the gun after the murder, and she did not see him with it after she saw him pointing it at the victim.

William Giolding testified that he was driving home from work between 3:30 and 4:00 on the afternoon of December 18, 2014, when he saw a truck burning in a field. Mr. Giolding got out of his car where another man had stopped on the side of the road. He testified that it was in Millington. Mr. Giolding waited at the scene until the fire department arrived. He took video of the scene while it was happening. The video was admitted into evidence at trial.

Dennis Wright testified that he was driving west on Mudville Road on December 18, 2014, when he noticed smoke and saw a brown or gold Chevy Trailblazer parked on the side of the road. He then noticed a burning truck down a hill off the road. Mr. Wright testified that he saw a man walk from the burning vehicle and get into the Trailblazer. Mr. Wright testified that when the man was three to four feet away from him, he said, "I burnt it." The man then drove away in the Trailblazer. At trial, Mr. Wright identified Defendant as the man he saw that day. Mr. Wright attempted to follow the man, but he was unable to catch up to him. Mr. Wright then returned to the scene and gave this information to a fireman who had arrived. On December 24, 2014, Mr. Wright went to the police station and identified Defendant in a photo lineup.

- 3 -

Louis Taper testified that Defendant and Ms. Cox came to Mr. Taper's house on December 18, 2014, for Mr. Taper to give Defendant a haircut. Mr. Taper testified that Defendant and Ms. Cox arrived in a gold Trailblazer. Mr. Taper started to cut Defendant's hair, but he did not finish because Mr. Taper had an appointment to meet with his probation officer sometime between 2:00 and 3:00 p.m. Mr. Taper testified that Defendant and Ms. Cox returned later that day for Mr. Taper to finish Defendant's haircut. Mr. Taper did not see Defendant put the victim's cell phone in his garage.

Detective Spencer Douglas, of the Shelby County Sherriff's Office, assisted in executing a search warrant for Mr. Taper's residence on December 26, 2014. Detective Douglas testified that he found an LG cell phone wrapped in a cloth inside a drawer of a table in Mr. Taper's garage.

Cameron Wesley testified that he was housed in the jail medical unit with Defendant in January, 2015. Mr. Wesley confirmed that he had a "lengthy prior criminal history." Mr. Wesley testified that Defendant told him about the crime. He testified that Defendant told him that Ms. Cox's mother was on the news talking about the murder, and she had said, "the coward that did this" needed to take responsibility for it. Defendant told Mr. Wesley that he thought Ms. Cox was "cooperating against him." Referring to the fact that Ms. Cox had been arrested prior to Defendant's arrest, Defendant told Mr. Wesley, "they got her first" and that the police could "make these broads crack." Defendant asked Mr. Wesley how Defendant could find out if Ms. Cox was talking to police about him. Defendant told Mr. Wesley that he could not believe Ms. Cox would "throw [him] to the dogs about some shit that [he] did to benefit [them]."

Another time, Defendant told Mr. Wesley that he had hired a lawyer and that all the police had against him was Ms. Cox's word against his. Defendant told Mr. Wesley that Ms. Cox "helped pull it off." Defendant told Mr. Wesley that the police had a "witness" but that "he ain't see me do it, but after I did the shit I struck out to running and as I was running away from the scene[,] it was a guy riding by in a truck and he saw me running away."

On cross-examination, Mr. Wesley acknowledged that he came forward with information about Defendant in hopes of getting a deal in his case. He believed that his attorney had told the prosecutor that he would help with the murder case in exchange for probation in his own case.

Deputy Chief Medical Examiner Dr. Marco Ross testified that the victim suffered two gunshot wounds to the head. Both of the bullets entered on the left side of the victim's face and exited on the right side of his neck. The victim's body was extensively

- 4 -

burned and charred. Dr. Ross testified that the manner of the victim's death was homicide, and the cause of his death was two gunshot wounds to the head.

Defendant did not testify or present any other proof at trial.

*Analysis*

*Venue*

Defendant contends the trial court erred in denying his motion for judgment of acquittal because the proof failed to establish that the church where the victim was killed was located within Shelby County. The State responds that the trial court properly found sufficient evidence to establish venue because it could take judicial notice that the intersection of the two roads where the victim was killed was in Shelby County, the case was investigated solely by the Shelby County Sheriff's Office, and the victim's body was found in Shelby County with no evidence of being transported across county lines.

The Tennessee Constitution provides that an accused must be tried in the county in which the crime is committed. Tenn. Const. art. I, § 9; *see also* Tenn. R. Crim. P. 18(a) ("Except as otherwise provided by statute or by these rules, offenses shall be prosecuted in the county where the offense was committed."). "Proof of venue is necessary to establish the jurisdiction of the court, but it is not an element of any offense and need only be proved by a preponderance of the evidence." *State v. Hutcherson*, 790 S.W.2d 532, 535 (Tenn. 1990); *see State v. Young*, 196 S.W.3d 85, 101 (Tenn. 2006) (holding that "[p]roof of venue is necessary to establish the jurisdiction of the court, but it is not an element of any offense"); *see also* Tenn. Code Ann. § 39-11-201(e) ("No person may be convicted of an offense unless venue is proven by a preponderance of evidence."). Venue can be established by the introduction of direct evidence, circumstantial evidence, or both. *State v. Smith*, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995). "[T]he jury is entitled to draw reasonable inferences from the evidence." *Young*, 196 S.W.3d at 101-02.

At the hearing on Defendant's motion for new trial, the trial court stated the following regarding venue:

> Well as far as venue and I'll say this, I am familiar with the country roads in our county and I'll just for the record take judicial notice that that intersection is in Shelby County[,] and it is not on the border, either, it is not. Of course, I don't know that I can take judicial notice for the jury.

In fact, as this court stated in *State v. Young*, "[v]enue is a question for the jury to determine from the evidence in the case." 617 S.W.2d 661, 664 (Tenn. Crim. App. 1981). The trial court's taking of judicial notice at the motion for new trial that the intersection at which the church where the victim was shot is located in Shelby County does not substitute for the necessity that the proof establish venue. *See id*.

Tennessee Rule of Evidence 201, adopted after this court's decision in *Young*, allows courts to take judicial notice of "adjudicative facts" not subject to "reasonable dispute." Tenn. R. Evid. 201(a), (b). The rule also provides, however, that "[i]n a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." Tenn. R. Evid. 201(g). There is no indication in the record, however, that the trial court took judicial notice of the location of the church or instructed the jury in accordance with Rule 201(g) prior to the motion for new trial. *See State v. Chadwick*, 750 S.W.2d 161, 165 (Tenn. Crim. App. 1987) (acknowledging that a court may take judicial notice of a city within a particular county, but the record in that case contained no indication that the trial judge had taken judicial notice of the location of the city at issue or had instructed the jury on that point.).

Here, as in *State v. Ellis*, 89 S.W.3d 584, 598 (Tenn. Crim. App. 2000), the State failed to adduce testimony that the intersection is located in Shelby County. Two aerial photos of the church were admitted into evidence during Ms. Cox's testimony. "Kerr Rosemark Road" and "Center College Road" are denoted on one of the photos, showing the intersection where both roads meet. Additionally, the Shelby County Sherriff's Office investigated the death of the victim. Detective Douglas and Officer Selby both testified that they worked for the Shelby County Sherriff's Office and were a part of the investigation. Defendant relies on *State v. Hutcherson* to support his argument that venue was not sufficiently established. *Hutcherson*, 790 S.W.2d 532 (Tenn. 1990). In *Hutcherson*, the Tennessee Supreme Court held that venue was not established with only evidence presented that the victim's mother called the Shelby County Sheriff's Office to report the crime and that the same office investigated the crime. *Id*. at 534. Unlike *Hutcherson*, however, in this case, this is not the only evidence presented establishing venue in Shelby County.

There was proof at trial that the victim's body was found in Shelby County, and no proof was presented that the body was taken across a county line after the victim's death. Mr. Giolding testified that he saw the victim's truck burning in a field on his way home from work. He stated that he did not "recall the road, but it was in Millington." Further, Mr. Giolding testified that Millington is in Shelby County. No evidence was presented that the offense occurred in any other county. *See Ellis*, 89 S.W.3d at 598. "Slight evidence [of venue] is enough to carry the prosecution's burden of proof if such evidence is uncontradicted." *Id*. (citations omitted).

- 6 -

We conclude that a preponderance of the evidence established that the offense occurred in Shelby County. Defendant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Defendant contends that the evidence was insufficient to convict him of felony murder. The State responds that the evidence was sufficient to support Defendant's conviction.

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *see also* Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Id.* (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Defendant was convicted of first degree murder in the perpetration of a robbery pursuant to Tennessee Code Annotated § 39-13-202(b) ("The killing of another committed in the perpetration of or attempt to perpetrate a robbery"). Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. T.C.A. § 39-13-401(a). A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. *Id.* § 39-14-103(a).

As to his challenge to the sufficiency of the evidence to convict, Defendant specifically argues that his conviction is based solely on the uncorroborated testimony of his accomplice, Ms. Cox. Further, Defendant specifically argues that the only proof of his identity as the perpetrator of the murder is the uncorroborated testimony of Ms. Cox.

- 7 -

The State argues that Ms. Cox's testimony was sufficiently corroborated and sufficiently establishes that Defendant killed and robbed the victim. We agree with the State.

Defendant is correct in stating that a conviction may not be based solely upon the uncorroborated testimony of an accomplice. *State v. Collier,* 411 S.W.3d 886, 894 (Tenn. 2013) (citing *State v. Little*, 402 S.W.3d 202, 211-12 (Tenn. 2013)). Additionally, accomplices cannot corroborate each other. *State v. Boxley*, 76 S.W.3d 381, 386 (Tenn. Crim. App. 2001). The Tennessee Supreme Court has held, however, that the corroboration required can be slight. In order to properly corroborate accomplice testimony:

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. The corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's [testimony].

*State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (quoting *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994)). The sufficiency of the corroboration is a determination entrusted to the jury as the trier of fact. *Shaw*, 37 S.W.3d at 903.

It is undisputed that Ms. Cox is an accomplice of Defendant in this case. The record reflects that she was indicted as a codefendant. We conclude that Ms. Cox's testimony was corroborated by other witnesses who testified at Defendant's trial, and the corroboration was sufficient to meet the standard announced in *Shaw*.

First, Mr. Wright's testimony corroborates Ms. Cox's testimony that Defendant was the person who stole the victim's truck and drove it to the location where it was found burning. Mr. Wright testified that he saw Defendant walking up the hill from the victim's burning vehicle, and Defendant admitted that he had burned the truck. Mr. Wright saw Defendant leave the scene of the burning vehicle in a gold Trailblazer. Mr. Wright's testimony also establishes that Defendant attempted to destroy evidence linking him to the victim's murder. Mr. Wright identified Defendant as the person he saw leaving the scene of the burning vehicle in a pretrial photo lineup and at trial. Investigators discovered the victim's body inside the burned vehicle. Investigators also

found the victim's cell phone inside Mr. Taper's garage, corroborating Ms. Cox's testimony that Defendant put it there and establishing that Defendant possessed the victim's phone after the victim's death and that he tried to conceal it.

Mr. Wesley's testimony further corroborated Ms. Cox's testimony. Mr. Wesley testified that Defendant expressed anger that Ms. Cox would talk to the police about "some shit that [he] did to benefit" both of them. Ms. Cox testified that Defendant had assured her that she would not have to have sex with the victim in exchange for money again. Defendant also told Mr. Wesley that Ms. Cox had "helped pull it off."

The State cites other examples of evidence presented at trial and argues that it corroborates the testimony of Ms. Cox. *Shaw* requires that the corroborative testimony both implicate the defendant and also identify the defendant. While the other examples provided by the State may have corroborated parts of Ms. Cox's testimony, they failed to both implicate and identify Defendant. Nevertheless, we conclude that there was more than just sufficient evidence to corroborate Ms. Cox's testimony. Moreover, the evidence clearly establishes Defendant's guilt of the offense. Defendant is not entitled to relief on this issue.

CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE