IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 7, 2020 Session

## CARLOS WILSON v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 12-03231          John Wheeler Campbell, Judge
_____

### No. W2018-01588-CCA-R3-PC
_____

The Petitioner, Carlos Wilson, appeals the denial of his petition for post-conviction relief. Following our review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Gregory Allen, Memphis, Tn, and Carlos Wilson, pro se, (at hearing) and Lance R. Chism, Memphis, Tennessee, (on appeal) for the appellant, Carlos D. Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In June 2012, the Shelby County Grand Jury indicted the Petitioner on one count of aggravated sexual battery and one count of especially aggravated sexual exploitation of a minor. Following the trial court's denial of the Petitioner's motions to suppress evidence and to recuse the trial court, the Petitioner was tried before a Shelby County Criminal Court jury, convicted of both counts as charged in the indictment, and sentenced to an effective term of twenty-one years in the Department of Correction. His convictions and sentences were affirmed by this court on direct appeal, and our supreme court denied his application

for permission to appeal. State v. Carlos Wilson, No. W2014-01388-CCA-R3-CD, 2015 WL 5772420, at *1 (Tenn. Crim. App. Sept. 30, 2015), perm. app. denied (Tenn. Jan. 25, 2016).

The Petitioner's convictions arose from his having sexually molested his girlfriend's young daughter and having videotaped some of the encounters. Id. at *1. After the Petitioner and the victim's mother had ended their romantic relationship and were living apart, someone found the Petitioner's cell phone, which he had lost in Florida, and mailed it to the victim's mother to return to the Petitioner. Id. Because the Petitioner was so adamant that she not look at the phone, the victim's mother opened it and discovered a video of the Petitioner "caressing [the victim's] bottom with her underwear and pants pulled down." Id. She turned the phone over to a Memphis police officer and a police detective later obtained a search warrant to examine its contents. She also accompanied officers to the Petitioner's hotel room under the pretense of returning his phone. Once there, officers showed the Petitioner the video the victim's mother had found and the Petitioner admitted to officers that he was the man on the video rubbing the victim's bare buttocks. He insisted, however, that he was merely performing a sports massage on the victim, whom he had trained in basketball. Id. at *4.

The Petitioner filed a number of motions prior to trial, both pro se and through counsel. Through counsel, the Petitioner filed a motion to suppress the results of the search of his phone. Following a hearing, the trial court denied the motion, finding that there was no proof that the victim's mother was acting as an agent of the State when she obtained and looked at the phone and thus that there was no Fourth Amendment violation. Id. at *2. The Petitioner then requested to represent himself, expressing to the trial court his belief that his counsel was not effectively attacking the validity of the search warrant and was not representing the Petitioner to the best of counsel's abilities because the Petitioner owed him money. Id. at *3. After questioning the Petitioner, the trial court found that the Petitioner could represent himself and granted his request to proceed pro se. The court appointed trial counsel to act as "standby counsel." Id.

Thereafter, the Petitioner filed another motion to suppress the evidence found on his cell phone. When the trial court informed him at the hearing on that motion that he had not supplied the necessary documentation in support of the motion, the Petitioner told the trial court that his motion "was actually about the statements he gave to police." Id. The trial court then granted the Petitioner's request for another hearing to consider a motion to suppress his statement. The hearing was held just before the start of trial. Mid-way through that hearing, after the Petitioner accused an officer of lying, the court informed the Petitioner that he would no longer allow him to represent himself because he was improperly inserting himself into the testimony and was going to "make a mess of things" if he did that in front of a jury. Id. at *4. Trial counsel, therefore, completed the hearing

- 2 -

and conducted the trial.  At the conclusion of the suppression hearing, the trial court denied the Petitioner's request to suppress the statements he made to the police officers in the hotel room, finding that the Petitioner was not in custody at the time the statements were made. Id. at *5.  The court suppressed the statements the Petitioner made after he had been placed in the police vehicle for transport downtown.  Id.

The trial court allowed the State to amend the indictment to correct the dates just before the trial began.  At trial, the victim testified "that, when she was about eleven, the [Petitioner] started massaging her 'body parts and it made [her] feel uncomfortable.'"  Id. at *7.  The victim said the first encounter occurred in the living room of their apartment in Laurelwood Apartments and involved the Petitioner eventually pulling down her shorts and underwear and massaging her thighs, shoulders, breasts, and the tip of her vagina.  She identified herself and the Petitioner on the DVD of the videos that had been found on the Petitioner's cell phone and testified that the massages "occurred 'a few times a week' and after ever practice" despite the fact that she told the Petitioner that they made her uncomfortable.  Id.

Other witnesses who testified on the State's behalf at trial were the victim's mother and three police officers/investigators who were involved in the case.  Id. at *6-9.

Consistent with his statement to the police, the Petitioner testified that he was merely performing therapeutic sports massages on the victim, who complained about pain in her legs and buttocks following her training sessions and basketball practices.  Id. at *9-10.  He denied that the videos were sexual in nature or that he viewed the victim in a sexual way and said that he videotaped the sessions "to document that he was not inappropriate" with the victim.  Id.

At the conclusion of the proof, the State elected the facts upon which it was relying to support the convictions.  Id. at *10.  For the aggravated sexual battery charge, the State elected the encounter that occurred in the Laurelwood Apartments in 2009 when the Petitioner first pulled down the victim's pants and underwear and touched her buttocks and vagina.  Id.  For the especially aggravated sexual exploitation of a minor charge, the State elected a video dated January 29, 2011 at 8:02 p.m. that "showed the [Petitioner] touching the buttocks of the victim while she was wearing pink patterned underwear and again when her panties were pulled below her bottom."  Id.

On March 3, 2016, the Petitioner filed a pro se motion for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel.  Following the appointment of post-conviction counsel, he filed an amended petition on January 31, 2017, and a supplement to the amended petition on February 27, 2017, in which he raised claims of ineffective assistance of trial and appellate counsel.  Among other things, he

alleged that trial counsel was ineffective for: failing to attack the validity of the search warrant on the grounds that officers made intentional misrepresentations in the affidavit; failing to adequately investigate the case or prepare a defense; failing to call witnesses at the suppression hearing who would have contradicted the State's proof; failing to file a recusal motion against the trial judge, who had been employed by the Shelby County District Attorney's Office when the indictment against the Petitioner was returned; failing to include the Petitioner's objection to the amendment of the indictment as an issue in the motion for new trial; failing to object to jury instructions; failing to object to the State's election of offenses; and failing to inform the Petitioner that he had withdrawn from the case. The Petitioner alleged that appellate counsel was ineffective for failing to raise the suppression issues on appeal. He additionally alleged that the trial court violated his constitutional rights by, among other things, not recusing itself and not allowing the Petitioner to proceed pro se at trial.

On February 1, 2017, the Petitioner filed a motion that the post-conviction judge, who had also presided over his trial, recuse himself on the grounds that he was employed with the Shelby County District Attorney's Office at the time of the Petitioner's indictment. On February 10, 2017, the post-conviction judge entered an order denying the motion, finding that there was no reason for recusal because he had been one of 106 attorneys employed at the district attorney's office and had no contact with or knowledge of the Petitioner's case during his tenure with that office.

The post-conviction hearing took place over several dates in 2017 and 2018, with the delays caused by the Petitioner's desire to call additional witnesses and his unhappiness with his post-conviction counsel. At the beginning of the hearing, post-conviction counsel, at the request of the Petitioner, renewed the Petitioner's motion to recuse the post-conviction judge. The judge reaffirmed his earlier ruling, noting for the record that he had taken the bench approximately two months after the Petitioner was indicted and had no knowledge of the case prior to the time it came before him as a trial court judge.

Appellate counsel testified that he frequently met with the Petitioner during the process of the appeal, reviewed the trial transcripts, and ultimately chose to raise on appeal the three issues he believed had the best chance of success: whether the Petitioner was improperly denied the right to self-representation; whether the imposition of consecutive sentences was proper; and whether the evidence was sufficient to sustain the convictions. He explained that he did not raise the suppression issues because he did not think the Petitioner's argument that the victim's mother was acting as an agent of the State had any chance of success. As for the Petitioner's statement to police, the Petitioner testified to "the exact same thing" at trial. Moreover, the Petitioner never invoked his right to remain silent.

Appellate counsel acknowledged that there was some discrepancy at the suppression hearing between the testimony of the victim's mother and the testimony of the officers with respect to which one knocked on the Petitioner's hotel room door and whether the Petitioner was immediately detained or invited the officers inside his hotel room. Nonetheless, he chose not to raise that issue on appeal. He acknowledged he also chose not to raise on appeal the fact that the suppression hearing transcripts were not available to trial counsel before trial. He explained that he did not believe that issue would have had any chance of success.

Trial counsel testified that he believed his best chance in the case was to get the videos suppressed. To that end, he argued that the victim's mother acted as an agent of the State rather than as a private citizen. In his opinion, the victim's mother engaged in fraudulent behavior in obtaining the cell phone and played an active role in the case by contacting the police to show them the video, arranging to meet the Petitioner at the hotel under the pretense of bringing him some food and returning the phone, and knocking on the Petitioner's hotel room door while the police were hidden behind her. The trial court, however, found that she had not been acting as an agent of the police and denied the motion to suppress.

Trial counsel testified that he raised the denial of the motion to suppress as an issue in the motion for new trial, but the Petitioner retained appellate counsel to represent him prior to the hearing on that motion. He said he was "very surprised" when he learned that appellate counsel had not raised the suppression issue on direct appeal and that he, personally, "would probably have raised every single issue, whether it ha[d] any chance of . . . success or not."

Trial counsel testified that he filed a Franks motion in which he argued that the search warrant was invalid on its face. He said the Petitioner believed that an evidentiary hearing on a Franks motion and a hearing on a suppression motion were two different things and did not understand that he had argued against the validity of the search warrant during the suppression hearing. He stated that the Petitioner wanted him to subpoena every single officer to a hearing to impeach them on the facts laid out in the affidavit. Trial counsel disagreed with that approach because he thought it would just allow the officers an opportunity to "clean up the testimony" prior to trial.

Trial counsel testified that he reviewed the sexual exploitation of a minor statute with the Petitioner "line by line." He and the Petitioner had lengthy discussions in which he repeatedly explained to the Petitioner, who kept focusing on the victim's birth date, that the victim's date of birth was not an element of the offense. Trial counsel acknowledged that the statute contains a requirement that the district attorney's office be involved in obtaining a search warrant related to the statute. He explained, however, that in the

Petitioner's case there was independent justification for the search warrant, which he believed under case law provided sufficient justification for the fact that the district attorney's office was not involved at the outset.

Trial counsel testified that he deliberately chose to use "a very light approach" during his cross-examination of the victim due to her age and the nature of the charges. He believed that he was able to elicit testimony from her in support of the Petitioner's position that the massages were therapeutic massages conducted as part of the Petitioner's relationship with the victim as coach and trainer. None of the victim's testimony surprised him and, in his opinion, she helped their case to an extent.

Trial counsel testified that he acted as the Petitioner's elbow counsel at the second suppression hearing, which was initiated by the Petitioner. Because he had handled the first suppression hearing, he was prepared to take over when the trial court reversed its decision about allowing the Petitioner to represent himself. Trial counsel said there were some minor inconsistencies between the testimony elicited at the two hearings but the inconsistences were not enough, in his opinion, to warrant subpoenaing additional witnesses to the hearing. He believed that he effectively brought out at trial the discrepancy between the testimony of the victim's mother, who indicated that officers viewed the contents of the cell phone before obtaining a warrant, and the testimony of the officer who said that a search warrant was obtained first.

Trial counsel testified that he initially had a very good relationship with the Petitioner, but over time the relationship soured as the Petitioner became more and more determined to represent himself and repeatedly expressed his unwillingness to accept the rulings of the trial court. He said he met numerous times with the Petitioner to discuss trial strategy but the meetings mainly consisted of his presenting the strategy to the Petitioner and the Petitioner disputing that strategy. According to trial counsel, the Petitioner wanted to represent himself with trial counsel essentially acting as his "puppet," so that there "was a lot of jockeying about who was the attorney and who was the defendant." He acknowledged having sent a letter to the Petitioner asking him to pay an overdue balance but denied that it affected his representation of the Petitioner. He said that, in light of the Petitioner's repeated expressions of his desire to represent himself, along with his apparent inability to pay for the suppression hearing transcripts, he suggested in the letter that the trial court might order the transcripts of the hearing at State cost if the Petitioner was able to convince the court to be allowed to represent himself.

Trial counsel testified that he cross-examined the victim about why she did not report the alleged abuse at an earlier date. However, he had to walk a fine line in attempting to suggest that she consented to the massages without appearing to actually argue consent because she was a minor and her consent was irrelevant to the offenses. He said there was

some discrepancy as to the age of the victim at the time of the incidents but not enough to change the offense from aggravated sexual battery to sexual battery. As he recalled, the indictment charged a range of dates rather than a particular date. He did not remember having consented to the State's amendment of the indictment to correct the year listed on the indictment, but he indicated that he could have, testifying that he could not recall.

Trial counsel testified that he filed a motion to suppress all the results of the unlawful search of the cell phone, which included the Petitioner's statements to the police. He did not file a motion to recuse the trial court because there was no basis for doing so; although the Petitioner expressed his belief that the trial judge "ha[d] it in for [him]," he saw nothing to make him believe the trial court was inappropriate. After he knew that the video was going to be admitted at trial, he strongly urged the Petitioner to accept the State's plea offer of eight years for count one with count two dismissed. He said he viewed the video at the jail and was able to see that, contrary to the Petitioner's belief, the Petitioner's face was clearly visible. The Petitioner, however, was adamant about going to trial.

Finally, trial counsel estimated that he spent over a hundred hours in preparation for the trial and testified that he was fully prepared to try the case.

Clorissa Thornton, the Petitioner's girlfriend, testified that the cell phone was hers, which she had given to the Petitioner to use. She said she asked trial counsel about the possibility of her testifying at the suppression hearing but counsel advised against it. She described the relationship between the Petitioner and trial counsel as very strained and tense.

Elnora Colette Dean, the Petitioner's sister, testified that she made it very clear to trial counsel that the cell phone belonged to Ms. Thornton. She also informed trial counsel that the Petitioner wanted to raise in the suppression hearing the fact that the victim's mother lied to obtain the phone. She later informed trial counsel that the Petitioner wanted that issue raised on appeal.

The Petitioner testified that the officers who arrested him testified untruthfully that they knocked on his hotel room door. He said it was the victim's mother who knocked on the door and that she then stood aside for the officers to barge into his room. According to the Petitioner, trial counsel admitted to him after the second suppression hearing that he should have subpoenaed the officers to that hearing. The Petitioner complained that, although trial counsel filed a motion to suppress the videos, he never argued that the Petitioner's statements should have been suppressed due to the warrantless entry by the police into his hotel room, which meant that the trial court never ruled on that issue. He said the trial court also never ruled on whether his statements should have been suppressed due to the warrantless search of his cell phone.

The Petitioner further complained that trial counsel never filed a motion to attack the validity of the search warrant itself and never followed up on the Petitioner's attempts at the second suppression hearing to show that the police officers lied in the search warrant affidavit and in their testimony about when they searched the cell phone.

The Petitioner testified that it was obvious in the videos that the victim was older than the age listed in the search warrant affidavit. Trial counsel, however, failed to investigate when the videos were made and failed to move to sever the offenses. Had counsel done so, he could have shown that the State could not satisfy the age element for aggravated sexual battery.

The Petitioner testified that the State amended the indictment to change the dates of the offenses on the day of trial, during the time he was still acting pro se. He said he told the trial court it "could do it" but objected for the record and asked trial counsel to include the issue in the motion for new trial, but trial counsel failed to do so. He stated that he drafted motions contesting the age of the victim, which trial counsel filed for him. However, trial counsel never "advocated for [him]" and did not raise the issue in the motion for new trial. Trial counsel also failed to cross-examine the victim about her age.

The Petitioner characterized his relationship with counsel as "terrible" and said that because of their conflicts, he felt that trial counsel was not really trying. He said he wanted trial counsel to inform the court that he and the Petitioner were experiencing a total breakdown in communication and to seek to withdraw from representation so that the trial court would appoint a different attorney. Counsel, however, did not do so.

When asked to explain his allegation that trial counsel failed to object to jury instructions, the Petitioner testified that the State failed to establish venue by proving that the videos were filmed in Shelby County. He also complained that the victim's testimony that the abuse first occurred in June 2010 while they were living in the Laurelwood Apartments was not true because they were living in a different apartment complex in June 2010. He said trial counsel failed to raise the above issues in the motion for new trial and appellate counsel failed to raise them on appeal.

The Petitioner testified that appellate counsel, despite his requests, also failed to raise on appeal the suppression issues, including the legality of his arrest, or the fact that the transcripts of the suppression hearing were not provided to him prior to trial.

The Petitioner testified that he did not learn until after trial that the trial judge was employed with the district attorney's office at the time the Petitioner was indicted. He said he thought trial counsel should have filed a motion to recuse the trial judge not just because

the judge had been employed at the district attorney's office but because the judge had been a deputy district attorney "responsible for the day-to-day running" of the office with supervisory power over the prosecutor in his case.

The hearing was continued to allow the Petitioner to reissue subpoenas, with the State's assistance, for witnesses who were either not served or failed to show for the evidentiary hearing. At a September 29, 2017 report date, the post-conviction court granted the Petitioner's request to proceed pro se with the remainder of the evidentiary hearing. At the January 5, 2018 continuation of the hearing, Deputy Jeffrey Wright of the Desoto County, Mississippi Sheriff's Department, who was formerly employed with the Memphis Police Department, testified that on the day of the Petitioner's June 4, 2011 arrest he and two other officers were dispatched to pick up the Petitioner at his hotel room and to take him to speak with investigators. He was unable to recall whether the victim's mother was with them or any other specifics of the arrest, testifying that it had been so long ago he no longer remembered the details.

Retired Memphis Police Department Lieutenant Sean Dauberger testified that he could not recall the details of the Petitioner's case. He believed, however, that the officers had been dispatched to arrest the Petitioner on a felony arrest warrant that had been issued. He said that after the officers arrested the Petitioner, he assumed they would have notified him because that was the standard operating procedure.

Memphis Police Officer D'Andre Johnson, who said he partially recalled the day of the Petitioner's arrest, testified that he was dispatched to the residence of the victim's mother in response to a call about the victim. He said he never viewed the cell phone but, it was possible that his partner did. He identified the affidavit of complaint, which he said had been written by his partner, Officer Simpson. He was fairly certain that he and his partner went to pick up the Petitioner based on an outstanding warrant on a narcotics misdemeanor and that they were the ones who knocked on the Petitioner's door when they arrived at his hotel. He said the Petitioner let them into the apartment, and they arrested him based on the outstanding warrant and on the marijuana that they found in his hotel room. He did not recall questioning the Petitioner about a cell phone.

At the final portion of the evidentiary hearing held on April 6, 2018, the victim's mother testified that she called the police after looking through the Petitioner's cell phone, showed the video to one of the officers who responded, set up the meeting with the Petitioner at his hotel room, brought the officers with her, and knocked on the Petitioner's door with the officers beside her. She said the Petitioner opened the hotel room door and one of the officers put his hand on the door to push it all the way open. She stated the officers did not arrest the Petitioner until after they found marijuana in his hotel room. She could not recall if the officers questioned the victim.

On July 23, 2018, the post-conviction court entered a detailed and lengthy written order denying the petition. Among other things, the court accredited the testimony of both trial and appellate counsel regarding their meetings and communication with the Petitioner and their investigation and preparation for the case and the appeal. The trial court found that the Petitioner made trial counsel's job very difficult due to the Petitioner's attempts to control how trial counsel conducted the case, the Petitioner's continual focus on irrelevant matters, and the Petitioner's unwillingness to listen to trial counsel. The post-conviction court characterized the Petitioner's conduct with counsel as "uncooperative and demanding" but found that trial counsel nonetheless represented the Petitioner "in a professional and effective manner." The court further found that the Petitioner failed to show that any of the witnesses he alleged that trial counsel should have called to the suppression hearings would have altered the outcome of the case.

With respect to the Petitioner's allegations of ineffective assistance of appellate counsel, the court found that appellate counsel, like trial counsel, fully investigated and prepared for the case. The court further found that appellate counsel offered a reasonable explanation for why he chose the issues he raised on direct appeal. The court, therefore, concluded that the Petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he was deprived of the effective assistance of either trial or appellate counsel.

## ANALYSIS

The Petitioner raises fifteen issues in his appeal to this court, which he states as follows: (1) whether the post-conviction court abused its discretion in denying Petitioner's motions to recuse; (2) whether the trial court abused its discretion by failing to sua sponte recuse itself; (3) whether trial counsel was ineffective for failing to file a motion asking the trial court to recuse itself; (4) whether appellate counsel was ineffective for failing to argue that the State failed to establish venue as to the offense of especially aggravated sexual exploitation of a minor; (6) whether trial counsel was ineffective for failing to argue that the State's election in count one was faulty; (7) whether trial counsel was ineffective for failing to file a motion to sever the offenses for trial; (8) whether trial counsel was ineffective for failing to allege in the motion for new trial that the trial court erred in allowing the State, on the first day of trial, to amend the time period in the indictment; (9) whether trial counsel was ineffective for failing to file and litigate a "Franks" motion; (10) whether trial counsel was ineffective for failing to call additional police officers as witnesses at the suppression hearing; (11) whether appellate counsel was ineffective for failing to argue on appeal that the trial court abused its discretion by failing to provide Petitioner with a copy of the April 30, 2013 suppression hearing transcript; (12) whether the cumulative effect of the above listed instances of deficient performance warrants post-

conviction relief; (13) whether the post-conviction court erred by failing to allow Petitioner to present the victim at the post-conviction hearing; (14) whether the post-conviction court erred by failing to ensure that Petitioner was knowingly and intelligently waiving his right to post-conviction counsel; and (15) whether this court should reconsider Petitioner's motion to supplement the record.

Tennessee's Post-Conviction Procedure Act affords post-conviction relief to a petitioner who is "in custody" and whose "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. §§ 40-30-102, -103. The post-conviction petitioner bears "the burden of proving the allegations of fact by clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f); see Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). We review a post-conviction court's "conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). We are bound by the post-conviction court's findings of fact unless the evidence preponderates against the findings, and we may not reweigh or reevaluate the evidence or substitute our own inferences for those drawn by the post-conviction court. Id. We must generally defer to the court's findings regarding "witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

- 11 -

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

## I. Recusal of Trial/Post-Conviction Judge

We first address the Petitioner's issues relating to his claims that the judge who presided at his trial and post-conviction hearing should have recused himself because he was employed at the district attorney's office when the Petitioner was indicted. The Petitioner argues that the judge should have sua sponte recused himself at trial, his trial counsel was ineffective for not filing a motion requesting that the judge recuse himself from trial, and the judge should have granted the Petitioner's motions that he recuse himself from the post-conviction proceedings. These issues are without merit.

"A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R.10, RJC 2.11 (A). Among the circumstances in which a judge should recuse himself or herself are when the judge "served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the public proceeding, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy." Tenn. Sup. Ct. R. 10, RJC 2.11 (A)(6)(b). "'[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias.'" State v. Clark, --S.W.3d --, No. E2020-00416-SC-T10B-CO, 2020

- 12 -

WL 6375472, at \*5 (Tenn. Oct. 30, 2020) (quoting State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008)).

The Petitioner argues that the judge should have recused himself from trial and the post-conviction proceedings because he was not only employed at the district attorney's office but was also a deputy district attorney with supervisory authority over the prosecutors in his case. Our supreme court addressed the same scenario in the recent cases of Clark and State v. Griffin, --S.W.3d--, No. E2020-00327-SC-T10B-CO, 2020 WL 6375601 (Tenn. Oct. 30, 2020). In those companion cases, the co-defendants argued that the fact that the indictment was returned when the trial judge was still serving as Knox County Deputy District Attorney General, with general supervisory authority over the prosecutors in that office, raised an appearance of impropriety that should have resulted in the judge's recusing himself from the case. Griffin, 2020 WL 6375601 at \*1; Clark, 2020 WL 6375472, at \*1. Our supreme court rejected that argument, holding that broad supervisory authority, without some evidence that the judge participated personally and substantially in the case, was an insufficient reason to reasonably question the judge's impartiality. The court noted that the analysis to be conducted "is whether a person of ordinary prudence in the judge's position, *knowing all the facts known to the* judge, would find a reasonable basis for questioning the judge's impartiality." Griffin, 2020 WL 6375601, at \*9 (internal quotations omitted).

The trial/post-conviction judge stated that he had no knowledge of the Petitioner's case prior to the time it came before him after his appointment to the bench. There was, therefore, nothing that required his recusal from the trial or the post-conviction proceedings. As for trial counsel's failure to file a motion for the judge to recuse himself, trial counsel explained that he saw nothing improper in the judge's handling of the case and no basis for such a motion. We conclude, therefore, that the Petitioner is not entitled to relief on the basis of these claims.

## II. Other Claims of Ineffective Assistance of Trial Counsel

In addition to his allegation that trial counsel was ineffective for not filing a motion for the judge to recuse himself, the Petitioner alleges that trial counsel was ineffective in the manner in which he handled the motions to suppress and the hearings on that motion, for his failure to move to sever the offenses for trial, for his failure to challenge the State's election of offenses, for his failure to argue that the State did not establish that the offenses occurred in Shelby County, and for his failure to raise the amendment of the indictment as an issue in the motion for new trial.

### A. Motions to Suppress/ Suppression Hearings

The Petitioner contends that trial counsel was deficient, thereby prejudicing his case, by not fully and properly filing and litigating motions to suppress the cell phone videos and his statements to police, including by not seeking to attack the validity of the search warrant itself. In denying relief on the basis of these claims, the post-conviction court, among other things, noted that the Petitioner failed to present any evidence in support of his claim that the officers intentionally misled the court to obtain the search warrant or that trial counsel was unaware of any fact or failed to pursue any course that could have aided the Petitioner's defense. The court further found that counsel was fully prepared to defend and try the case and made sound tactical decisions about which issues to pursue. The court, therefore, concluded that the Petitioner failed to show either a deficiency in counsel's performance or any resulting prejudice to his case based on counsel's handling of the suppression issues.

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel's testimony, which was accredited by the court, established that he fully investigated the case, met with the Petitioner on numerous occasions to discuss the facts and the trial strategy, and raised and argued the suppression issues before the trial court. Trial counsel testified that the Petitioner did not understand that he argued against the validity of the search warrant itself during the suppression hearing. He said the Petitioner focused on irrelevant issues and repeatedly expressed his unwillingness to accept the rulings of the trial court. Trial counsel also explained that any discrepancies in the testimony of the police officers were minor and, in his opinion, too insufficient to warrant calling each officer as a witness to the suppression hearings. This belief is borne out by the testimony of the officers at the post-conviction evidentiary hearing, who offered nothing to show that their testimony would have been particularly helpful to the Petitioner in a suppression hearing or that it would have altered the outcome of the hearing. The Petitioner, who throughout the evidentiary hearing and post-conviction proceedings accused various witnesses of having lied under oath, appears to be mainly attempting to relitigate the case. However, credibility determinations in this case have already been made by the trial court in the suppression hearings, and the jury at the trial. The Petitioner has not met his burden of showing that trial counsel was in any way deficient in his handling of the suppression issues or that he was prejudiced by any alleged deficiency on counsel's part. We conclude, therefore, that the Petitioner is not entitled to relief on the basis of these claims.

## B. Severance of Offenses

The Petitioner contends that trial counsel was ineffective for failing to seek a severance of offenses in order to prevent the jury from viewing the prejudicial videotapes in the especially aggravated sexual battery case. Under Rule 14 of the Tennessee Rules of Criminal Procedure, a defendant is entitled to seek a severance of offenses unless the

offenses are part of a "common scheme or plan and the evidence of one would be admissible in the trial of others." Tenn. R. Crim. P. 14(b)(1).

"[W]ithin the context of ineffective assistance of counsel, the Petitioner must prove that the decision to not seek a severance of offenses fell outside of the range of competence demanded of criminal attorneys." William Darryn Busby v. State, No. M2012-00709-CCA-R3PC, 2013 WL 5873276, at *17 (Tenn. Crim. App. Oct. 30, 2013), perm. app. denied (Tenn. Mar. 5, 2014) (citations omitted).

The Petitioner failed to elicit any testimony from trial counsel at the evidentiary hearing about why he did not move for a severance. Trial counsel was, therefore, never afforded an opportunity to explain his reasoning. As such, we presume that counsel's not seeking a severance was a sound tactical decision, no doubt due to the fact that a severance was not warranted under the facts of this case and would not have been granted. It is difficult to envision how trial counsel could have made any sort of winning argument that the Petitioner's molestation of the victim and his filming of that molestation were not part of a common scheme or plan, or that evidence of one offense should not be admitted at the trial of the other. We conclude, therefore, that the Petitioner is not entitled to relief on the basis of this claim.

### C. Election of Offenses

The Petitioner contends that trial counsel provided ineffective assistance by failing to challenge the State's election in count one, in which the State elected the first episode the victim described in which the Petitioner massaged her bare buttocks and vagina during the time they were living in the Laurelwood Apartments.

The Petitioner acknowledges that trial counsel was not questioned during the evidentiary hearing about why he failed to object to the State's election of offenses. Instead, he cites a general comment trial counsel made that "with regard to sex crimes, election of offenses, is sort of over" to suggest that trial counsel was deficient by failing to recognize that he should have objected to the election based on the fact that the victim, who testified that the Petitioner touched her vagina almost every time he massaged her, did not clearly and specifically testify that the Petitioner touched her vagina during the first time that he massaged her in the Laurelwood Apartments. The Petitioner asserts that "had counsel objected to this faulty instruction, the instruction could have been cured" or, in the alternative, trial counsel could have raised it as an issue in the motion for new trial. According to the Petitioner, had trial counsel raised the issue in the motion for new trial, "the trial court would have granted relief," and had the trial court not granted relief, this court "would have on appeal."

- 15 -

We respectfully disagree with the Petitioner's conclusions about what the outcome of the issue would have been in the trial court or in this court had trial counsel and appellate counsel raised it at trial and/or on appeal. Moreover, as mentioned above, the Petitioner never questioned trial counsel about why he did not raise any objection to the election of offenses, thereby preventing trial counsel from explaining his rationale.

Regardless, the Petitioner cannot show that trial counsel was deficient for not objecting to the election of offenses or that he was prejudiced as a result of trial counsel's failure to do so.

The State made the following election of offenses for the aggravated sexual battery count of the indictment:

> [T]he offense described by the act of alleged sexual contact, which consisted of the [Petitioner] pulling down the victim's pants and underwear and touching her buttocks and vagina, skin to skin, for the first time. This was alleged to have occurred in the Summer of 2009 at the Laurelwood Apartments when the victim was 12 years of age.

We agree with the State that such an election was not improper. "The election doctrine refers to the prosecutor's duty in a case where evidence of multiple separate incidents is introduced to elect for each count charged the specific incident on which the jury should deliberate to determine the defendant's guilt." State v. Qualls, 482 S.W.3d 1, 9-10 (Tenn. 2016) (citations omitted). The election requirement "serves to ensure that the jury understands its obligation to agree unanimously that the defendant committed the same criminal act before it may convict the defendant of a criminal offense." Id. Trial counsel's off-hand comment about the election of offense being somewhat "over" in sex abuse cases was likely a reflection of his awareness that the State has long been allowed "some latitude" in the election of offenses "in the prosecution of criminal acts committed against young children who are frequently unable to identify a specific date on which a particular offense was committed." Id. (citations omitted). "'[T]he election requirement is merely a means by which to protect the right to a unanimous verdict. There is no right to a perfect election, and indeed, as this Court has recognized, the election requirement may be satisfied in a variety of ways.'" Id. (quoting State v. Knowles, 470 S.W.3d 416, 423 (Tenn. 2015)).

The victim's testimony, like the testimony of many child victims, was somewhat hesitant and equivocal. She testified, however, that the Petitioner first began massaging her in the Laurelwood Place Apartments, that he pulled her pants and underwear down, and that he progressed to rubbing her thighs and the tip of her vagina. She further testified that the Petitioner massaged her a few times a week and after every practice and that he continued the practice despite the fact that she told him that the massages made her

- 16 -

uncomfortable. Although it was not crystal clear from her testimony that the Petitioner progressed to rubbing her vagina during the first episode, the implication was that he did and that he followed a similar course of action during each encounter.

We agree with the State that although the Petitioner labels this as an election issue, he appears in essence to be challenging the sufficiency of the evidence by arguing that the victim's testimony was insufficient to sustain a conviction for the elected offense. This court has, however, already found on direct appeal that the evidence was sufficient to sustain the conviction. We conclude, therefore, that the Petitioner is not entitled to relief on the basis of this claim.

### D. Venue

The Petitioner contends that trial counsel was ineffective by failing to argue that the State failed to establish venue for the offense of especially aggravated sexual exploitation of a minor. In support, the Petitioner cites the fact that the victim never testified that the cell phone videos were filmed in Shelby County.

As with the election of offenses issue, the Petitioner failed to question trial counsel at the evidentiary hearing about this issue, so that counsel was not afforded an opportunity to respond. We agree with the State, however, that there were good reasons for trial counsel not to challenge the proof of venue. No one can be convicted of an offense unless proof of venue is established by a preponderance of the evidence. See Tenn. Code Ann. § 39-11-201(e) ("No person may be convicted of an offense unless venue is proven by a preponderance of evidence."); see also State v. Young, 196 S.W.3d 85, 101 (Tenn. 2006). Venue, however, can be established by circumstantial evidence, see State v. Smith, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995), and "the jury is entitled to draw reasonable inferences from the evidence." Young, 196 S.W.3d at 101-02.

Although the victim did not specifically testify that the videos were filmed in Shelby County, she testified that the "massages" the Petitioner performed and videotaped occurred first in their apartment in the Laurelwood Apartments, then in their apartment in the Windsor Place Apartments where she moved with the Petitioner and her mother when she was twelve, and later in the Petitioner's hotel room after he had moved out of their apartment but continued to occasionally pick her up after school and take her to his hotel room to work out with a weight bench. Carlos Wilson, 2015 WL 5772420, at *7. Her testimony, along with testimony from her mother and the police officers and the Petitioner himself, which indicated that the parties lived in Shelby County during the events that transpired, was sufficient for the jury to find that venue for both offenses was in Shelby County. Moreover, we agree with the State that had trial counsel raised an objection to

- 17 -

venue, it might have opened the door for the State to recall the victim or her mother to offer more damaging testimony about the Petitioner's abuse of the victim. We conclude, therefore, that the Petitioner is not entitled to relief on the basis of this claim.

### E.   Amendment of the Indictment

The Petitioner contends that trial counsel was also ineffective for failing to raise the amendment of the indictment as an issue in the motion for new trial. The State responds by arguing that trial counsel cannot be faulted for failing to come up with a reason to challenge the amendment of the indictment in the motion for new trial when the Petitioner himself not only appeared to acquiesce to the amendment but also failed to identify any way in which he was prejudiced by the amendment. We agree with the State.

On February 20, 2014, the State filed a motion to amend the indictment, seeking to "amend the time period alleged in the indictment to between June 1, 2007 and June 7, 2011, rather than the time period alleged of between June 1, 2010 and June 7, 2011." At the February 24, 2014 hearing on that motion, the Petitioner, who at that time was still representing himself, informed the court that he thought it would put him at a "great disadvantage" because he and the victim's mother were not even dating during that earlier time period. The trial court inquired how that fact could possibly prejudice him. After further discussion with the court and conference with his elbow counsel, the Petitioner agreed to the amendment, stating that he was going to agree to it although he did not understand how the indictment could be suddenly changed and that he thought it was prejudicial toward him for the State to amend it at such a late date. He did not offer any further reasons as to why he felt prejudiced by the amendment.

On appeal, the Petitioner argues that trial counsel was ineffective for not raising the issue in the motion for new trial because "broadening" the time period alleged in the indictment "forced [the Petitioner] to defend himself on three additional years of allegations" and "allowed the State to cover much more ground in the victim's twelfth year of life."

We disagree that trial counsel was deficient for failing to raise the issue or that the Petitioner was prejudiced as a result of trial counsel's alleged deficiency. First, as previously mentioned, the Petitioner consented to the amendment. Second, and more importantly, the Petitioner could not show how he was prejudiced by the amendment. Rule 7 of the Tennessee Rules of Criminal Procedure provides that the trial court may amend an indictment even without the defendant's consent before jeopardy attaches "if no different or additional offense is changed and no substantial right of the defendant is prejudiced." Tenn. R. Crim. P. R. 7 (a)-(b). We conclude, therefore, that the Petitioner is not entitled to relief on the basis of this claim.

### III.  Claims of Ineffective Assistance of Appellate Counsel

The Petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal the suppression issues or the fact that the Petitioner did not have transcripts of the suppression hearings available before trial.  The post-conviction court found that appellate counsel made sound tactical decisions, backed by his full preparation for the case, about which issues to raise on direct appeal.  The record fully supports the findings and conclusions of the post-conviction court.  Appellate counsel explained that he chose to raise the three issues he believed had the best chance of success on appeal and that he did not raise the suppression issues or the lack of the suppression hearing transcripts because he did not believe they stood any chance of success.  We conclude, therefore, that the Petitioner is not entitled to relief on the basis of these issues.

### IV.  Cumulative Error

The Petitioner contends that even if the various alleged deficiencies in trial and appellate counsel's performance did not individually prejudice the outcome of the proceedings, the cumulative effect of the various deficiencies was to prejudice his case.  We respectfully disagree.

### V.  Alleged Errors of Post-Conviction Court

The Petitioner contends that the post-conviction court erred by failing to allow him to present the victim as a witness at the post-conviction hearing and by failing to ensure that the Petitioner was knowingly and intelligently waiving his rights to post-conviction counsel at the evidentiary hearing.  We, once again, respectfully disagree.

As the State points out, the record reflects that the post-conviction court did not prevent the Petitioner from presenting the victim as a witness at the hearing.  Instead, the court made every effort to assist the Petitioner in obtaining the witnesses he wanted, instructing the State to issue subpoenas on the Petitioner's behalf and repeatedly continuing the hearing to allow the Petitioner time to gather witnesses.  The victim, however, had apparently left the jurisdiction to attend school and was not reachable by subpoena.  This claim is, therefore, without merit.

Also without merit is the Petitioner's claim that the post-conviction court failed to ensure that he knowingly and intelligently waived his right to post-conviction counsel. We agree with the State that the Petitioner, in making this claim, ignores the long and involved history of this case, including the Petitioner's repeated requests over many months and many court and hearing dates that he be allowed to represent himself and the post-

conviction court's repeated discussions with the Petitioner about the dangers in doing so and the benefits of remaining with counsel. Moreover, as the State points out, the Petitioner does not argue on appeal that his decision to represent himself was unknowing or unintelligent but instead that the post-conviction court failed to follow the proper procedure in thoroughly questioning the Petitioner about his desire to represent himself on the date that the court finally acquiesced in the Petitioner's repeated requests to do so. The Petitioner is not entitled to relief on the basis of this issue.

## VI. Supplementation of the Record

Finally, the Petitioner contends that this court should reconsider our July 5, 2019 order entered in response to the Petitioner's motion that the record on appeal be supplemented by various documents. In that order, we granted the Petitioner's request as to documents that had been filed in the post-conviction court but denied it as to other items that were not included in the direct appeal and not introduced as exhibits to the post-conviction evidentiary hearing.

The Petitioner argues that his post-conviction counsel should have entered those omitted items into evidence at the post-conviction evidentiary hearing and requests "that this Court take post-conviction counsel's deficient performance into consideration in reconsidering its earlier ruling on Petitioner's motion to supplement the record." The Petitioner additionally argues that he should be granted some latitude because he "made numerous efforts to obtain various items located in the court files" during the time he was acting pro se.

The State responds by acknowledging that the Petitioner made it clear he "wanted to review and re-review every scrap of paper" that could in any way be connected with the police investigation, his trial, or his post-conviction proceedings. The State questions, however, whether any of those various documents would have made a difference to the hearing. Regardless, the State argues that this court should not allow the record to be supplemented to include items that were never received by the lower court. We agree with the State, and we respectfully decline to reconsider our earlier ruling in this matter.

## <u>CONCLUSION</u>

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE